[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 12, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-15258
_____

D. C. Docket No. 99-00600 CV-JAL

DEBORAH CARRINGER,

Plaintiff-Appellant,

versus

STANLEY RODGERS,
CITY OF BARNESVILLE,
ETHEL TESSMER,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(June 12, 2002)**

Before ANDERSON, HULL and KENNEDY*, Circuit Judges.

PER CURIAM:

_____

*Honorable Cornelia G. Kennedy, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

Plaintiff Deborah Carringer appeals the district court's dismissal of her state-law claims against all three defendants, as well as its grant of summary judgment to two of the defendants on her § 1983 claims. Plaintiff's claims arise out of the murder of her son. Plaintiff contends that the district court erred in concluding that she lacked standing to bring a wrongful death action under Georgia law, and also in concluding that she did not have standing to assert § 1983 claims because she was not her son's personal representative. After review, we find that it is necessary to certify three questions of Georgia law to the Georgia Supreme Court.

## I. BACKGROUND

In September 1997, Plaintiff Carringer's son, David Newton, married Defendant Ethel Tessmer, a police captain for Defendant City of Barnesville (the "City"). Shortly thereafter, in November 1997, Tessmer attempted suicide. As a result, Defendant Stanley Rodgers, as Chief of Police for the City, ordered Tessmer to remove all weapons from her home. Defendant Rodgers did not, however, relieve Tessmer of her duties, and thus she continued to carry her service revolver.

In January 1998, less than four months after their marriage, Defendant Tessmer shot and killed Newton with her service revolver. A jury convicted

Tessmer of felony murder, and she is currently incarcerated in state prison.[1]

Other than Tessmer, Newton is survived by only his mother, Plaintiff Carringer. Upon Carringer's application, the Lamar County Probate Court appointed Carringer as the administrator of her son's estate. Tessmer contested the appointment, however, and on December 9, 1999, the Superior Court of Lamar County reversed the Probate Court's decision. The issue of who is to be the administrator of Newton's estate remains pending.

In January 2000, Plaintiff Carringer brought this lawsuit asserting § 1983 claims against Defendants Rodgers and the City, and state-law claims for wrongful death and for funeral expenses against Defendants Tessmer, Rodgers, and the City. Tessmer filed a motion to dismiss arguing that Carringer lacks standing to bring a wrongful death action under Georgia law. In response, Carringer noted that pursuant to Georgia's wrongful death statutes, she, as a parent, would have standing to bring a wrongful death action if her deceased son had left no spouse or children. Carringer argued that under Georgia law, Tessmer should be treated as though she had predeceased Newton, and asked the district court to do the same. The district court declined to do so, strictly construing Georgia's wrongful death

---

[1]Tessmer's criminal conviction was still on appeal as of the date of the district court's ruling on Carringer's wrongful death claims, but that criminal conviction was subsequently affirmed by the Georgia Supreme Court. Tessmer v. State, 539 S.E. 2d 816 (Ga. 2000).

statutes. Likewise, the district court found that Carringer had no standing to bring a state-law claim for funeral expenses. Shortly thereafter, the district court also dismissed the wrongful death claims against Defendants Rodgers and the City on the same ground.

Following the district court's dismissal of the state-law claims, Rodgers and the City filed a joint motion for summary judgment on the § 1983 claims. Their motion contended that under the reasoning of the district court's order dismissing the wrongful death claims, Carringer also did not have standing to bring the § 1983 claims.

In granting Rodgers and the City's motion for summary judgment, the district court stated that its reasoning as to the state-law wrongful death claims did not apply to the § 1983 claims because § 1983 claims are survival actions. The district court noted that under Brazier v. Cherry, 293 F.2d 401 (5th Cir. 1961), a federal court looks to the law of the state in which it sits to determine whether a § 1983 cause of action survived the death of the victim. The district court concluded that "[b]oth Georgia case law and federal case law make clear that civil torts that might have been brought by an individual immediately prior to his death, can only be brought by the administrator of his estate after his death." Therefore, the district court concluded that Carringer lacked standing to bring the § 1983

4

claims against Rodgers and the City because § 1983 actions are survival actions and not wrongful death actions, and Carringer was not Newton's administrator (the proper party to bring survival actions).[2] Hence, the court granted Rodgers and the City's motion for summary judgment on Carringer's § 1983 claims.

Carringer timely appealed both rulings.

## II. GEORGIA'S WRONGFUL DEATH STATUTES

The Georgia legislature has enacted a statutory framework that determines who has standing to bring a wrongful death claim. The Georgia statutes specifically provide for various conditions under which a decedent's surviving spouse or children, a decedent's parents, or a decedent's personal representative may bring a wrongful death action for the full value of the decedent's life.

### A.    O.C.G.A. § 51-4-2

More specifically, Chapter 4 of Title 51 of the Georgia Code governs the tort of wrongful death. Section 51-4-2(a) of the Georgia Code provides that the surviving spouse may recover for the homicide of a spouse, as follows:

---

[2]At oral argument in this appeal, Carringer's counsel stated that Carringer was not interested in pursuing the § 1983 claim as a survival action, but only as a wrongful death action. Because Newton died instantly, Carringer instead seeks damages for the full value of Newton's life. We question (though we do not decide) whether Carringer is in a position to waive any right to pursue the § 1983 claim as a survival action because Carringer is not her son's personal administrator. However, we understand this statement to mean that if Carringer were reappointed as her son Newton's personal administrator, she would not elect to pursue the § 1983 claim as a survival action on behalf of Newton's estate.

> The surviving spouse or, if there is no surviving spouse, a child or children, either minor or sui juris, may recover for the homicide of a spouse or parent the full value of the life of the decedent, as shown by the evidence.

O.C.G.A. § 54-1-2(a). The district court held that under the plain language of this statute, Tessmer, not Carringer, would be "entitled to recover" for the homicide of Newton.

**B.     O.C.G.A. §§ 51-4-4 and 19-7-1**

Carringer asserts that O.C.G.A. § 51-4-2 should not control here because Tessmer, as the surviving spouse, will obviously not be suing herself. Carringer asks this court to focus instead on O.C.G.A. § 51-4-4 and O.C.G.A. § 19-7-1, which address the rights of parents to bring a wrongful death action. Section 51-4-4 of the Georgia Code provides in full, "The right to recover for the homicide of a child shall be provided in Code Section 19-7-1." O.C.G.A. § 51-4-4. Title 19 of the Georgia Code governs "Domestic Relations" and Chapter 7 of Title 19 addresses the "Parent and Child Relationship Generally." Section § 19-7-1(c) of the Georgia Code in turn provides generally that in every homicide of a child, there shall be some party entitled to recover and further provides specifically the standing rule for parents, as follows:

> (1) In every case of the homicide of a child, minor or sui juris, there shall be some party entitled to recover the full value of the life of the child, either as provided in this Code section or as provided in Chapter 4 of Title 51.
> (2)  If the deceased child *does not leave a spouse or child*, the right of

6

recovery shall be in the parent or parents, if any [as provided in further subsections of this section]."

(3) "The intent of this subsection is to provide a right of recovery in every case of the homicide of a child *who does not leave a spouse or child*. If, in any case, there is no right of action in a parent or parents under the above rules, the right of recovery shall be determined by Code Section 51-4-5 [the personal-representative provision, discussed herein]

O.C.G.A. § 19-7-1(c) (emphasis added). Carringer emphasizes that the Georgia legislature has expressed an unequivocal intent to provide recovery in every case of the homicide of a child and that because the spouse Tessmer killed Newton, this court should treat this case as one where the decedent child did not leave a spouse, which would allow Carringer, the decedent's parent, to recover instead.

In this regard, the district court held that under O.C.G.A. § 19-7-1(c), "the right to bring a claim for the wrongful death of a child inures first to a surviving spouse or child. If there is no surviving spouse, only then is the right of recovery in the child's parent." The court rejected Carringer's argument that it should treat Tessmer as though she had predeceased Newton for the purpose of applying O.C.G.A. § 19-7-1. It stated that because the action for wrongful death is not an asset of Newton's estate, O.C.G.A. § 53-1-5 did not apply.

**C.    O.C.G.A. § 51-4-5**

The parties also dispute whether O.C.G.A. § 51-4-5 applies here. Section 51-4-5 of the Georgia Code is a default provision that allows the administrator or

executor to bring and action for wrongful death in certain circumstances, as follows:

> (a) When there is no person entitled to bring an action for the wrongful death of a decedent under Code Section 51-4-2 or 51-4-4, the administrator or executor of the decedent may bring an action for and may recover and hold the amount recovered for the benefit of the next of kin. In any such case the amount of the recovery shall be the full value of the life of the decedent.

O.C.G.A. § 51-4-5(a). The district court stated that the existence of this section bolstered its conclusion that Carringer did not have standing under O.C.G.A. § 19-7-1 because O.C.G.A. § 51-4-5(a) allows the personal representative to recover, but only "[w]hen there is no person entitled to bring an action for the wrongful death of a decedent under Code Section 51-4-2- or 51-4-4." As the district court had concluded that Tessmer was "entitled" to bring the wrongful death action under O.C.G.A. § 51-4-2, it decided that there was no need to look to either the parent or the personal representative to bring the action.[3]

---

[3]On appeal, the defendants argued only that Carringer does not have standing to bring a wrongful death action, but never affirmatively that Tessmer has standing to bring the action. Indeed, in the district court, Tessmer argued that only the personal representative was entitled to bring the action.

The district court, however, based its conclusion in part on Tessmer being "entitled" to bring the wrongful death action. It determined that Tessmer was entitled to bring the wrongful death action because (1) it was not clear to the district court that Georgia law would foreclose Tessmer's right to bring the wrongful death action even though she had at least contributed to her spouse's death, and (2) Tessmer's role in her spouse's death had not been conclusively determined because her conviction was not yet final.

In particular, the district court stated that "the fact that [Tessmer] contributed to Newton's wrongful death does not automatically foreclose on her right to bring a wrongful death action," citing Matthews v. Douberley, 428 S.E.2d 588 (Ga. App. 1993). In Matthews, a father's

The district court also held that Carringer had no standing to bring a state-law claim for funeral expenses.[4] Carringer has only appealed the district court's dismissal of her state-law claim for wrongful death and her § 1983 claims. But Carringer's complaint seeks to recover damages for the "full value of Mr. Newton's life, including funeral expenses" as part of her damages. Thus, at issue is also whether Carringer may recover funeral expenses as part of her damages under state law.[5]

_____

negligence contributed to a car accident in which the mother was killed, leaving a daughter. The Georgia Court of Appeals affirmed a verdict based on a jury instruction that, if the jury found the father's negligence was equal to or greater than that of the defendant, he could not recover for his own portion of the wrongful death claim, but that the father could recover on behalf of the daughter regardless of the degree of the father's fault. Id. at 589-90. This was so because the daughter's right to recover was not dependent on the father's right. Id. at 590-91.

It is unclear, however, whether Matthews would be applied here by the Georgia courts because (1) Tessmer would be recovering on her own behalf, and (2) the rule stated in Matthews foreclosed the father's recovery if he was at least equally as negligent as the defendant, and here, Tessmer was not merely negligent, but committed an intentional (and criminal) tort.

The district court also stated, "Moreover, . . . Tessmer's role in Newton's death has not been conclusively determined by the Georgia appellate courts. Had Tessmer's conviction become final before the statute of limitations expired, the Court may have determined that Tessmer's right to bring a claim was foreclosed." Tessmer's conviction has since been upheld by the Georgia Supreme Court, and is therefore final for the purposes of this appeal.

[4]Rather, the district court concluded that under Georgia law, only the personal representative may bring the wrongful death claims for those debts. See O.C.G.A. § 51-4-5(b) (allowing personal administrator to bring action for "funeral, medical, and other necessary expenses resulting from the injury and death of the deceased person" in the event of death caused by a crime or negligence); Walden v. John D. Archibold Mem. Hosp., Inc., 398 S.E.2d 271, 274 (Ga. App. 1990) (survival claims and causes of action under O.C.G.A. § 51-4-5(b) for medical and funeral expenses vest in personal administrator, not in heirs and next of kin).

[5]Compare Hosley v. Davidson, 439 S.E.2d 742, 745 (Ga. App. 1993) (stating that "the funeral and burial expenses are debts of the estate[ ]") with Gay v. Piggly Wiggly Southern, Inc., 358 S.E.2d 468, 473 (Ga. App. 1987) (concluding that O.C.G.A. § 51-4-5(b) is really a survival

9

## III. THE PARTIES' ADDITIONAL CONTENTIONS

We now outline further arguments of the parties on appeal.

The defendants argue that O.C.G.A. § 19-7-1, by its express terms, does not apply to give Carringer standing. The statute states that the parent may sue if the deceased "does not leave a spouse or child." O.C.G.A. § 19-7-1(c)(2). Here, Newton did leave a spouse, Tessmer. Thus, the defendants argue that Carringer has no cause of action. They also rely on Georgia caselaw stating that, because the wrongful death statutes are in derogation of common law, they must be strictly construed. See, e.g., Tolbert v. Maner, 518 S.E.2d 423 (Ga. 1999).

Carringer argues first that foreclosing her from standing under O.C.G.A. § 19-7-1 because Tessmer is a "surviving spouse" leads to absurd results. Specifically, Carringer contends that the Georgia legislature could not have intended that the killer be the only person who had a cause of action for wrongful death.

Second, Carringer points to Georgia caselaw allowing children to sue under O.C.G.A. § 54-1-2 when there is a surviving spouse but that spouse refuses or is unavailable to sue. For instance, in Brown v. Liberty Oil & Refining Corp., 403

statute, not wrongful death statute, except as to the provision for funeral expenses, which is an expense growing out of wrongful death).

S.E.2d 806 (Ga. 1991), the mother of minor children had been killed and the mother's spouse, who had previously abandoned the children, would not sue. The court held that the children could sue under O.C.G.A. § 51-4-2 in spite of the spouse's survival, stating, "the factual circumstances of this case demand the exercise of [general equitable] powers to preserve the rights of the minor children. The trial court should have allowed these minors, who have no remedy at law, to maintain an action for the wrongful death of their mother." Id. at 808. Carringer contends that this and other cases demonstrate that Georgia courts will liberally construe the wrongful death statutes under their equity powers to ensure that someone has a remedy for the decedent's wrongful death. Carringer also points to Georgia's "slayer statute," O.C.G.A. § 53-1-5, as support for her position that Tessmer should be treated as having predeceased Newton for the purposes of O.C.G.A. § 19-7-1 so that Carringer would have standing to bring a wrongful death action.

The defendants contend that the plain language of the statutes is not ambiguous, nor does it create a conflict with legislative intent. According to the defendants, O.C.G.A. § 19-7-1, the standing provision for parents, only applies if the deceased "does not leave a spouse or child" because the wrongful death statutes were intended primarily to provide for the spouse and children of a decedent.

11

Also, if "there is no person entitled to bring the action" under either O.C.G.A. § 51-4-2 or O.C.G.A. § 19-7-1, one may look, the defendants argue, to the personal representative to bring the action under O.C.G.A. § 51-4-5. Therefore, according to the defendants, either Tessmer is entitled to bring the action or perhaps the personal representative may bring the action — but in any event, Carringer is not entitled to bring it.

The defendants further point out that, to the extent that the cases cited by Carringer indicate that Georgia courts are willing to depart from the strict construction rule of <u>Tolbert</u>, they are distinguishable from the present case. When the spouse sues under O.C.G.A. § 54-1-2, the spouse sues also as a representative of the children, with whom the spouse shares the award. Thus, the defendants stress that allowing a court to exercise its equitable power on behalf of the decedent's children is consistent with the traditional purpose of wrongful death statutes – to ensure that the dependents of a decedent were provided for in the case of the decedent's homicide. They assert that this policy concern is not necessarily present in this case where a parent, rather than a surviving spouse or child, seeks standing to bring a wrongful death suit. The defendants further note that, far from supporting Carringer's "liberal construction" argument, the fact that the Georgia legislature provided a slayer provision with respect to inheritance shows that the

12

legislature could have created such a provision in the wrongful death statutes if it had wanted to.

In sum, a strict reading of the Georgia wrongful death statutes would appear to foreclose Carringer from having standing to bring a wrongful death claim. On the other hand, there is some support in the Georgia caselaw for Carringer's more liberal reading of the statutes and some examples of the Georgia courts having exercised equitable powers to effectuate the purpose of the wrongful death statutes. The issues here have never been directly addressed by the Georgia appellate courts and Georgia law provides no clear answers.

## IV. CERTIFICATION

There is unsettled tension as to the application of the Georgia wrongful death statutes that prevents us from being able to determine the proper application of those statutes in this case. Because the Georgia Supreme Court is the most appropriate tribunal to resolve this issue, we hereby CERTIFY the following questions to the Georgia Supreme Court:

I.  UNDER GEORGIA LAW, DOES THE PARENT OF A DECEDENT CHILD WHO WAS MURDERED BY HIS SURVIVING SPOUSE HAVE A WRONGFUL DEATH CAUSE OF ACTION AGAINST EITHER THE SPOUSE-MURDERER AND/OR ANY OTHER PERSON OR ENTITY WHO WAS THE PROXIMATE CAUSE OF THE DECEDENT'S DEATH? IF SO, FOR WHAT DAMAGES? (I.E. FULL VALUE OF THE LIFE OF THE DECEDENT? FUNERAL EXPENSES? ANY OTHER DAMAGES?)

13

II. IF THE PARENT OF A DECEDENT CHILD DOES NOT HAVE A WRONGFUL DEATH CAUSE OF ACTION UNDER THESE FACTS, DOES THE PARENT HAVE STANDING TO BRING ANY OTHER CAUSE OF ACTION UNDER STATE LAW FOR DAMAGES FOR THE DEATH OF HER CHILD? IF SO, WHAT CAUSE OF ACTION, AGAINST WHOM, AND FOR WHAT DAMAGES?

III. IF A PARENT OF A DECEDENT CHILD DOES NOT HAVE STANDING TO BRING ANY CAUSE OF ACTION UNDER STATE LAW FOR DAMAGES FOR THE MURDER OF HER CHILD BY HIS SURVIVING SPOUSE, DOES ANY OTHER THIRD PARTY HAVE SUCH A REMEDY? IF SO, WHAT CAUSE OF ACTION AND FOR WHAT DAMAGES?

The phrasing used in these certified questions should not restrict the Georgia Supreme Court's consideration of the questions posed by this case, nor its restatement of the issues, or the manner in which its answers are given.

In order to assist the Georgia Supreme Court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the Georgia Supreme Court.

**QUESTIONS CERTIFIED.**

14