S02Q1483. CARRINGER v. RODGERS et al.

(578 SE2d 841)

HINES, Justice.

This case is before the Court on certified questions from the United States Court of Appeals for the Eleventh Circuit.[1] *Carringer v. Rodgers*, 293 F.3d 1299 (11th Cir. 2002). The first question certified is:

I. Under Georgia law, does the parent of a decedent child who was murdered by his surviving spouse have a wrongful death cause of action against either the spouse-murderer and/or any other person or entity who was the proximate cause of the decedent's death? If so, for what damages? (i.e., full value of the life of the decedent? Funeral expenses? Any other damages?)

The answer is that under the Wrongful Death Act, OCGA § 51-4-1 et seq., and OCGA § 19-7-1 (c), the parent of a decedent child who was

---

[1] 1983 Ga. Const., Art. VI, Sec. VI, Par. IV; OCGA § 15-2-9.

murdered by his surviving spouse has standing to bring a cause of action for the wrongful death of the child against the murdering spouse and/or another individual or entity proximately causing the child's death; the parent may recover for the full value of the life of the child.[2]

## BACKGROUND

The Eleventh Circuit's questions arise from an action brought by Deborah Carringer for wrongful death and other claims stemming from the murder of her son, David Newton. The Eleventh Circuit set forth the relevant facts.

In September 1997, Newton married Ethel Tessmer, a police captain for the City of Barnesville ("City"). Tessmer attempted suicide in November 1997. As a result, Stanley Rodgers, as Chief of Police for the City, ordered Tessmer to remove all weapons from her home. Rodgers did not, however, relieve Tessmer of her duties, and she continued to carry her service revolver. In January 1998, less than four months after their marriage, Tessmer shot and killed Newton with her service revolver. Tessmer was subsequently convicted of felony murder, her conviction was later affirmed on appeal, and she is currently incarcerated in a state prison. See *Tessmer v. State*, 273 Ga. 220 (539 SE2d 816) (2000).

Other than Tessmer, Newton is survived by only his mother, Carringer. Carringer was originally appointed as administrator of her son's estate; however, Tessmer contested the appointment, and it appears that the issue of who is to be the administrator of Newton's estate remains pending.

In January 2000, Carringer filed suit asserting 42 USC § 1983 claims against Rodgers and the City, and state-law claims for wrongful death and for funeral expenses against Tessmer, Rodgers, and the City. Tessmer filed a motion to dismiss, arguing that Carringer lacks standing to bring a wrongful death action under Georgia law. In response, Carringer noted that pursuant to Georgia's wrongful death statutes, she, as a parent, would have standing to bring a wrongful

---

[2] The United States Court of Appeals for the Eleventh Circuit certified the following additional questions, which have been rendered moot by this Court's answer to the first inquiry:

II. If the parent of a decedent child does not have a wrongful death cause of action under these facts, does the parent have standing to bring any other cause of action under state law for damages for the death of her child? If so, what cause of action, against whom, and for what damages?

III. If a parent of a decedent child does not have standing to bring any cause of action under state law for damages for the murder of her child by his surviving spouse, does any other third party have such a remedy? If so, what cause of action and for what damages?

death action if her deceased son had left no spouse or children. Carringer argued that under Georgia law, Tessmer should be treated as though she had predeceased Newton, and asked the district court to do so. The district court declined; it also found that Carringer had no standing to bring a state-law claim for funeral expenses. The district court also dismissed the wrongful death claims against Rodgers and the City on the same ground.

Following the district court's dismissal of the state-law claims, Rodgers and the City filed a joint motion for summary judgment on the § 1983 claims. They contended that under the reasoning of the district court's order dismissing the state wrongful death claims, Carringer also did not have standing to bring the § 1983 claims.

In granting Rodgers' and the City's motion for summary judgment, the district court stated that its reasoning about state-law wrongful death claims did not apply to the § 1983 claims because § 1983 claims are survival actions. The district court noted that under *Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961), a federal court looks to the law of the state in which it sits to determine whether a § 1983 cause of action survived the death of the victim. The district court concluded that "[b]oth Georgia case law and federal case law make clear that civil torts that might have been brought by an individual immediately prior to his death, can only be brought by the administrator of his estate after his death." Therefore, the district court concluded that Carringer lacked standing to bring the § 1983 claims against Rodgers and the City because § 1983 actions are survival actions, not wrongful death actions, and Carringer was not Newton's administrator (the proper party to bring survival actions). Accordingly, the court granted Rodgers' and the City's motion for summary judgment on Carringer's § 1983 claims. Carringer timely appealed both rulings to the Eleventh Circuit.[3]

The Eleventh Circuit found that Georgia's wrongful death statutes establish a statutory framework that determines who has standing to bring a wrongful death claim, and that the statutory scheme specifically provides for various conditions under which a decedent's surviving spouse or children, a decedent's parents, or a decedent's

---

[3] The Eleventh Circuit stated in a footnote:

At oral argument in this appeal, Carringer's counsel stated that Carringer was not interested in pursuing the § 1983 claim as a survival action, but only as a wrongful death action. Because Newton died instantly, Carringer instead seeks damages for the full value of Newton's life. We question (though we do not decide) whether Carringer is in a position to waive any right to pursue the § 1983 claim as a survival action because Carringer is not her son's personal administrator. Nevertheless, we understand this statement to mean that if Carringer were reappointed as her son Newton's personal administrator, she would not elect to pursue the § 1983 claim as a survival action on behalf of Newton's estate.

personal representative may bring a wrongful death action for the full value of the decedent's life. The Eleventh Circuit concluded that a strict reading of the Georgia wrongful death statutes appeared to foreclose Carringer from having standing to bring a wrongful death claim, but that there was contrary support in Georgia caselaw; that there were examples of the exercise of equitable powers to effectuate the purpose of the wrongful death statutes; and that the issues had never been directly addressed by the Georgia appellate courts and Georgia law provided no clear answers. We take this opportunity to clarify the question of standing to bring the wrongful death claims under the circumstances of this case.

## DISCUSSION

The right to file a claim for wrongful death did not exist at common law; it is entirely a legislative creation and is authorized in Georgia by the Wrongful Death Act, OCGA § 51-4-1 et seq. *Tolbert v. Maner*, 271 Ga. 207, 208 (1) (518 SE2d 423) (1999), citing *Edenfield v. Jackson*, 251 Ga. 491, 492 (306 SE2d 911) (1983). Accordingly, the language of the Act is to be given its plain and ordinary meaning. Id. OCGA § 51-4-4 governs recovery for the wrongful death of a child and provides, "The right to recover for the homicide of a child shall be as provided in Code Section 19-7-1."

OCGA § 19-7-1 (c) provides in pertinent part:

> (1) In every case of the homicide of a child, minor or sui juris, there shall be some party entitled to recover the full value of the life of the child, either as provided in this Code section or as provided in Chapter 4 of Title 51.
> (2) If the deceased child does not leave a spouse or child, the right of recovery shall be in the parent or parents, if any, given such a right by this paragraph as follows: [order of recovery].
> (3) The intent of this subsection is to provide a right of recovery in every case of the homicide of a child who does not leave a spouse or child. If, in any case, there is no right of action in a parent or parents under the above rules, the right of recovery shall be determined by Code Section 51-4-5.[4]

---

[4] OCGA § 51-4-5 authorizes recovery by a personal representative for wrongful death and for certain expenses:
  (a) When there is no person entitled to bring an action for the wrongful death of a decedent under Code Section 51-4-2 or 51-4-4, the administrator or executor of the decedent may bring an action for and may recover and hold the amount recovered for the benefit of the next of kin. In any such case the amount of the recovery shall

In the recent case, *Belluso v. Tant,* 258 Ga. App. 453 (574 SE2d 595) (2002), the Court of Appeals of Georgia was asked to consider whether a father had standing to maintain a claim against his son-in-law for the wrongful death of his adult daughter who was killed in a collision for which the son-in-law was criminally charged. The father's 43-year-old daughter died after her husband of less than a year, Tant, lost control of the vehicle in which she was a passenger. The police investigation revealed that at the time of the fatal mishap, Tant was driving in excess of 90 mph and had imbibed alcoholic beverages. Tant was charged with homicide by vehicle, driving under the influence of alcohol, failure to maintain lane, and speeding. Tant obtained appointment as the personal representative of his wife's estate.

Belluso, the father, filed a wrongful death action against Tant; Tant moved for summary judgment contending that Belluso lacked standing to file the action because there was a surviving spouse and because Tant had been appointed the personal representative of his wife's estate. The trial court reluctantly granted summary judgment to Tant noting that: "OCGA § 19-7-1 grants a right of recovery to the decedent's parent only when the decedent leaves no surviving spouse or child and that OCGA § 51-4-5 'vest(s) the right of recovery in the administrator of the decedent's estate, the Defendant here.' " Id. The Court of Appeals reversed and remanded the case with direction after concluding that "it is within the equity powers of the superior court to permit the prosecution of the wrongful death action by a parent when the surviving spouse is the alleged wrongdoer." Id. at 455. The conclusion is sound.

The cardinal rule in construing a legislative act, is " 'to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose.' " *City of Jesup v. Bennett,* 226 Ga. 606, 608 (2) (176 SE2d 81) (1970). As noted in *Belluso v. Tant,* supra at 454, this Court has clearly stated the purposes of the wrongful death statutes:

> The [wrongful death] statutes . . . create a new cause of action and new rights and duties for the prevention of criminal and negligent homicides and to meet social and economic needs. The aim of these statutes is to strike at the evil of the negligent destruction of human life, by imposing liability

---

be the full value of the life of the decedent.
    (b) When death of a human being results from a crime or from criminal or other negligence, the personal representative of the deceased person shall be entitled to recover for the funeral, medical, and other necessary expenses resulting from the injury and death of the deceased person.

upon those who are responsible either directly through themselves or indirectly through their employees for homicides. It is not beyond the power of the legislature to attempt to preserve human life by making homicide expensive. It may impose an extraordinary liability, such as [the wrongful death] statutes do, not only upon those at fault, but upon those who, although not directly culpable, are able nevertheless in the management of their affairs to guard substantially against the evil to be prevented.

*Western &c. R. Co. v. Michael*, 175 Ga. 1, 13 (165 SE 37) (1932). The wrongful death statutes impose a monetary penalty upon the wrongdoer in favor of the person who is authorized to sue for the homicide. Id. at 14. See also *Engle v. Finch*, 165 Ga. 131, 134 (139 SE 868) (1927). Thus, the wrongful death laws serve dual roles: they seek to prevent the loss of human life by making "homicide expensive," and they seek to preserve the social and economic order. *Western &c. R. Co. v. Michael*, supra at 13. Both concerns are extant in the present case.

First, it is certain that the legislature intended that there be a monetary recovery in all instances of the homicide of a child, whether the child is a minor or an adult. As OCGA § 19-7-1 (c) plainly states, "[i]n every case of the homicide of a child, minor or sui juris, there shall be some party entitled to recover the full value of the life of the child. . . ." This right of action is vested in the parent or parents when there is no surviving spouse or surviving child of the decedent. In the present case, there is no dispute that Tessmer was married to the deceased child and that she is still living. So the question is not the plain language of the statute which orders a recovery for the surviving spouse, but whether Tessmer should be deemed a surviving spouse so as to hold the right of action for the wrongful death. And the answer to this question must be "no."

The wrongful death laws do not contemplate the absurd result and "legal impossibility" of the wrongdoer having to sue herself to recover for the wrongful death. *Belluso v. Tant*, supra at 455. It is equally plain that the legislature did not intend that a murdering spouse financially benefit from the murder by possessing the ability to pursue the right of action for the victim's death against any other parties potentially liable for the homicide. See OCGA § 53-1-5 which provides for the forfeiture of a killer's rights to receive benefits from the slain person or to serve as a fiduciary of the decedent's estate or any trust created by the decedent, and OCGA § 33-25-13 which contains similar forfeiture provisions regarding the killer's receipt of life insurance benefits from the victim's demise. Nor did the legislature intend that the killer render herself immune from civil liability

because only she held the cause of action as the surviving spouse. Such circumstances would completely subvert the very purposes of the wrongful death laws. *Western &c. R. Co. v. Michael*, supra at 13.

This case is not the first instance in which this Court has had to consider a compelling factual scenario under the plain language of the wrongful death statutes in order to effectuate the legislative intent. In *Brown v. Liberty Oil &c. Corp.*, 261 Ga. 214 (403 SE2d 806) (1991), this Court was faced with the construction of OCGA § 51-4-2 (a), which provides for a right of action for the wrongful death of a spouse to reside in the surviving spouse, and, if no surviving spouse, in the child or children. There the surviving spouse had abandoned the minor children, could not be located, and it was alleged that, in any event, he would not pursue the claim for wrongful death. Id. This Court held that the factual circumstances of the case demanded the exercise of equitable powers to preserve the rights of the minor children. Id. at 216 (2). See also *Emory Univ. v. Dorsey*, 207 Ga. App. 808 (429 SE2d 307) (1993). In the concurring opinion in *Brown*, it was observed that "[t]he surviving spouse who has abandoned his children should have no greater right to defeat their potential entitlement than were he dead." *Brown v. Liberty Oil &c. Corp.*, supra at 216.

It is argued that the policy concern in *Brown* is not present in this case because OCGA § 51-4-2 (a) was intended to provide monetarily for the spouse and children, i.e., the dependents of the decedent, and that the parent Carringer did not depend on her deceased son for support. But the circumstances raised by this case are no less compelling. Regardless of the mother and son's relative financial situations and any question of dependency at the time of the son's death or in the future, it cannot be credibly argued that an aging parent losing an adult child is not damaging to the social and economic order, a primary concern of the wrongful death laws. *Western &c. R. Co. v. Michael*, supra at 13. Nor is such an argument in concert with the express legislative directive of a recovery in all instances.[5]

The legislature intends that there always be a right of recovery in the case of the homicide of a child, and because Tessmer is precluded from this right of recovery, the parent Carringer has standing to bring a cause of action for the wrongful death of her son in order to recover for the full value of his life.[6]

---

[5] It has also been suggested that the exercise of equity is inappropriate in this case because certain alleged actions by both the decedent, Newton, and his mother Carringer, make them undeserving of it. However, while the defense may attempt to raise the cited conduct in any trial on the merits of the claim for the wrongful death of Newton, it can have no bearing on the question of whether a killer can hold or control the civil right to recover for the wrongful death of the killer's victim.

[6] Regarding recovery for other expenses resulting from the injury and death, OCGA

*Questions answered. All the Justices concur, except Fletcher, C. J., and Thompson, J., who dissent.*

FLETCHER, Chief Justice, dissenting.

Because the plain language of the wrongful death statute clearly precludes the plaintiff's claim, I dissent.

At common law, there was no right to bring a claim for wrongful death.[7] Since the legislature enacted the wrongful death statute in derogation of the common law, this Court must strictly construe it.[8] When the statutory language is clear and unambiguous, we apply the plain meaning to the words of the statute to carry out the legislature's intention.[9] " 'The express language of the Act will be followed literally and no exceptions to the requirements of the Act will be read into the statute by the courts.' "[10] Following this rule of statutory construction, this Court has repeatedly limited the scope of the Wrongful Death Act to its express terms, even when it means denying a person the right to recover.[11]

OCGA § 51-4-2 gives the surviving spouse and children the right to recover for the homicide of the spouse or parent; OCGA § 19-7-1 governs the right of a parent to recover for the homicide of a child.[12] It provides: "If the deceased child does not leave a spouse or child, the right of recovery shall be in the parent or parents." This provision means that parents have a wrongful death claim only when their child does not leave a surviving spouse or child.

Applying the plain meaning of this statutory language, Deborah Carringer is not entitled to recover for the wrongful death of her son because he left a surviving spouse. Unlike the previous case in which this Court allowed children to sue for the death of their mother despite a surviving spouse,[13] Carringer did not depend on her adult

---

§ 51-4-5 (b) provides that the personal representative of the deceased person is entitled to recover for the funeral, medical, and other necessary expenses resulting from the injury and death of the deceased person. However, the right of recovery for wrongful death in this case is under OCGA § 19-7-1, and therefore, OCGA § 51-4-5 does not apply. OCGA § 19-7-1 (c) (3); *Belluso v. Tant*, supra at 456.

[7] See *Edenfield v. Jackson*, 251 Ga. 491 (306 SE2d 911) (1983).

[8] See *State Farm Fire & Cas. Co. v. Southern Bell Tel. & Tel. Co.*, 245 Ga. 5 (262 SE2d 895) (1980).

[9] See *Oxford v. Carter*, 216 Ga. 821 (120 SE2d 298) (1961).

[10] See *Tolbert v. Maner*, 271 Ga. 207 (518 SE2d 423) (1999).

[11] See *Tolbert*, 271 Ga. 207 (rejecting claim brought by the descendant of a child who predeceased a parent); *Miles v. Ashland Chemical Co.*, 261 Ga. 726 (410 SE2d 290) (1991) (declining to extend the statute of limitation for wrongful death beyond two years from the date of death); *Ford Motor Co. v. Carter*, 239 Ga. 657 (238 SE2d 361) (1977) (holding no cause of action for wrongful death under strict liability); *Odom v. Atlanta & W.P.R. Co.*, 208 Ga. 45 (64 SE2d 889) (1951) (rejecting children's right of action while their father's widow lives).

[12] See OCGA § 51-4-4.

[13] See *Brown v. Liberty Oil & Refining Corp.*, 261 Ga. 214 (403 SE2d 806) (1991).

son for support. More important, the circumstances surrounding his death do not demand the exercise of our equitable powers to permit his mother's claim to proceed against the City of Barnesville and its police chief.[14]

I am authorized to state that Justice Thompson joins in this dissent.

DECIDED MARCH 24, 2003.

*Ralph S. Goldberg*, for appellant.

*Katz, Flatau, Popson & Boyer, Sandra J. Popson, Mullins, Whalen & Westbury, Andrew J. Whalen III, James R. Westbury, Jr.,* for appellees.

---

[14] See *Tessmer v. State*, 273 Ga. 220, 221 (539 SE2d 816) (2000).