[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 23, 2003
THOMAS K. KAHN
CLERK

_____

No. 01-15258

_____

D. C. Docket No. 00-00014-CV-HL-5-2

DEBORAH CARRINGER,

Plaintiff-Appellant,

versus

STANLEY RODGERS,
CITY OF BARNESVILLE,
ETHEL TESSMER,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(May 23, 2003)**

Before ANDERSON, HULL and KENNEDY[*], Circuit Judges.

PER CURIAM:

After the death of her son, Plaintiff Deborah Carringer filed suit against

defendants Police Chief Stanley Rodgers and the City of Barnesville under 42

_____

[*]Honorable Cornelia G. Kennedy, United States Circuit Judge for the Sixth Circuit, sitting
by designation.

U.S.C. § 1983. Carringer also brought state law claims for the wrongful death of her son and for funeral expenses against Officer Ethel Tessmer, Chief Rodgers, and the City. The district court dismissed Carringer's state law claims against all three defendants, and granted summary judgment to Chief Rodgers and the City on her § 1983 claims, based on the conclusion that she did not have standing to assert any of her claims.

After review, oral argument, and certifying a question to the Georgia Supreme Court, we vacate the district court's dismissal of Carringer's state law claims against all three defendants. We also vacate the district court's grant of summary judgment to defendants Chief Rogers and the City on Carringer's § 1983 claims.

## I. BACKGROUND

Carringer's son, David Newton, married Ethel Tessmer, a police captain for the City of Barnesville, in September 1997. After Officer Tessmer attempted suicide in November 1997, the City's Chief of Police, defendant Stanley Rodgers, ordered Officer Tessmer to remove all weapons from her home. Chief Rodgers did not, however, relieve Officer Tessmer of her duties. Therefore, Officer Tessmer was permitted to carry her service revolver. In January 1998, less than four months after they were married, Officer Tessmer shot and killed her husband Newton with her service revolver.

2

In January 2000, Carringer, as Newton's mother, filed a § 1983 action against Chief Rodgers and the City. Carringer also filed state law claims for the wrongful death of her son and funeral expenses against Officer Tessmer, Chief Rodgers, and the City.

The district court strictly construed Georgia's wrongful death statutes and concluded that Carringer had no standing to bring either a wrongful death action or a claim for funeral expenses under Georgia law. Following the district court's dismissal of Carringer's claims for wrongful death and funeral expenses, Chief Rodgers and the City filed a motion for summary judgment on the § 1983 claims. The district court concluded that "[b]oth Georgia case law and federal case law make clear that civil torts that might have been brought by an individual immediately prior to his death, can only be brought by the administrator of his estate after his death." Because Carringer was not her son's administratrix, the district court concluded that Carringer did not have standing to bring her § 1983 action against Chief Rodgers and the City. Carringer appealed.

In Carringer v. Rodgers, 293 F.3d 1299 (11th Cir. 2002), this Court considered the scope of Georgia's wrongful death statutes, see O.C.G.A. §§ 51-4-1 to 51-4-2, 51-4-4 to 51-4-5 (2000) and § 19-7-1 (Supp. 2002),[1] and whether

---

[1]Section 51-4-2 (Homicide of spouse or parent; survival of action) states, in relevant part, as follows:
    (a) The surviving spouse or, if there is no surviving spouse, a child or children, either minor or sui juris, may recover for the homicide of the spouse or parent the

3

Carringer, as a parent, had standing to sue for the wrongful death of her son. After

our review of this state law issue, we concluded that "[t]here [was] unsettled

tension as to the application of the Georgia wrongful death statutes that

prevent[ed] us from being able to determine the proper application of those

statutes in this case." Id. at 1305. Thus, we certified the following question to the

Georgia Supreme Court:

> UNDER GEORGIA LAW, DOES THE PARENT OF A DECEDENT
> CHILD WHO WAS MURDERED BY HIS SURVIVING SPOUSE
> HAVE A WRONGFUL DEATH CAUSE OF ACTION AGAINST
> EITHER THE SPOUSE-MURDERER AND/OR ANY OTHER
> PERSON OR ENTITY WHO WAS THE PROXIMATE CAUSE FO
> THE DECEDENT'S DEATH? IF SO, FOR WHAT DAMAGES? (I.E.
> FULL VALUE OF THE LIFE OF THE DECEDENT? FUNERAL
> EXPENSES? ANY OTHER DAMAGES?)

---

full value of the life of the decedent, as shown by the evidence.

Section 51-4-4 (Homicide of a child) states as follows:
> The right to recover for the homicide of a child shall be as provided in Code
> Section 19-7-1.

Section 51-4-5 (Recovery by administrator or executor of decedent) states as follows:
> (a) When there is no person entitled to bring an action for the wrongful death of a
> decedent under Code Section 51-4-2 or 51-4-4, the administrator or executor of
> the decedent may bring an action for and may recover and hold the amount
> recovered for the benefit of the next of kin. In any such case the amount of the
> recovery shall be the full value of the life of the decedent.
> (b) When death of a human being results from a crime or from criminal or other
> negligence, the personal representative of the deceased person shall be entitled to
> recover for the funeral, medical, and other necessary expenses resulting from the
> injury and death of the deceased person.

Section 19-7-1 (Parental power; recovery for homicide of child) states, in relevant part, as
follows:
> (c) (1) In every case of the homicide of a child, minor or sui juris, there shall be
> some party entitled to recover the full value of the life of the child, either as
> provided in this Code section or as provided in Chapter 4 of Title 51.
> (2) If the deceased child does not leave a spouse or child, the right of recovery
> shall be in the parent or parents, if any . . . .

4

Id. at 1305.

The Georgia Supreme Court responded as follows:

> The legislature intends that there always be a right of recovery in the case of the homicide of a child, and because Tessmer [the spouse-murderer] is precluded from this right of recovery, the parent Carringer has standing to bring a cause of action for the wrongful death of her son in order to recover for the full value of his life.

Carringer v. Rodgers, 2003 WL 1442301, at *5 (Ga. 2003). The Georgia Supreme Court also stated that Carringer, under O.C.G.A. § 19-7-1, may recover funeral expenses under state law. See id., at *5 n.6. Having received a definitive statement of Georgia law from the Georgia Supreme Court, we now address the district court's original decision dismissing Carringer's state law claims for the wrongful death of her son and funeral expenses. We then discuss the district court's grant of summary judgment to defendants Chief Rodgers and the City on Carringer's § 1983 claims.

## II. DISCUSSION

### A. Wrongful Death Action under Georgia Law

The Georgia Supreme Court has concluded that because the spouse-murderer is precluded from recovery, Carringer, as a parent, has standing to assert both claims for the wrongful death of her son and for funeral expenses. See id., 2003 WL 1442301, at *5 & n.6. We are bound by the Georgia Supreme Court's determination of state law. See Silverstein v. Gwinnett Hosp. Auth., 861 F.2d

5

1560, 1569 (11th Cir. 1988) ("It is well settled that federal courts are bound by the interpretation of a state [law] by state courts."). Accordingly, we vacate the district court's order dismissing Carringer's state law claims against all three defendants.

## B.    Section 1983

Although Carringer can assert her state law claims, we still must address her right to bring a § 1983 action against Chief Rodgers and the City for the wrongful death of her son.[2]  In resolving this issue, we must answer these two questions: (1) whether a decedent's § 1983 claim terminates upon his death; and (2) if not, where do we look to determine who may bring a § 1983 claim for the wrongful death of the decedent whose constitutional rights were violated.  These questions were answered by binding precedent in Brazier v. Cherry, 293 F.2d 401 (5th Cir. 1961).[3]

---

[2]The district court determined that Carringer lacked standing because § 1983 actions where death resulted are survival actions and not wrongful death actions.  According to the district court, the fact that Carringer was not her son's administratrix (the proper party to bring survival actions under Georgia's survival statute, O.C.G.A. § 51-4-5), precluded her from proceeding with her § 1983 claims.  Carringer's complaint does not, however, cite to either the Georgia survival or wrongful death sections.  Instead, Carringer's complaint simply seeks recovery of "the full value of [her son's] life."  Under Georgia law, recovery for the "full value of the life of the decedent" is available to Carringer under Georgia's wrongful death statute.  See Carringer, 2003 WL 1442301, at *5; O.C.G.A. §§ 51-4-1 to 51-4-2, 51-4-4 to 51-4-5.  Carringer was not the administratrix of her son's estate at the time the suit was filed and she is not today.  We, therefore, conclude that Carringer's § 1983 claims are premised on a wrongful death claim under O.C.G.A. §§ 51-4-1 to 51-4-2, 51-4-4 to 51-4-5 and 19-7-1(c)(1).

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to

6

In Brazier, a widow in Georgia sued police officers for beating her husband to death in violation of his constitutional rights. Id. at 402. The plaintiff widow asserted her federal claims: (1) as the surviving wife individually for the wrongful death of her husband; and (2) as administratrix of the decedent's estate. Id. The district court dismissed the plaintiff's § 1983 claims, concluding that the claims for violations of the decedent's constitutional rights terminated upon his death. Reversing, this Court concluded that 42 U.S.C. § 1988 incorporated both Georgia's wrongful death statute and Georgia's survival statute in order to provide full remedies for the violations of the decedent's constitutional rights under § 1983. Id. at 409.[4]

The Brazier Court first considered the issue of recovery under § 1983 when death occurs, and framed the issue as: "whether death resulting from violation of

the close of business on September 30, 1981.

[4]42 U.S.C. § 1988 states, in relevant part, as follows:
The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.
42 U.S.C. § 1988(a).

the Civil Rights Statutes gives rise to a federally enforceable claim for damages sustained by the victim during his lifetime, by his survivors, or both." Id. at 402. Recognizing that the civil rights statutes "d[id] not expressly refer to actions for death or the survival of claims arising from civil rights violations," this Court determined, in contravention of the common law rule, that the decedent's constitutional claims did not terminate upon his death. Id. at 403-04. The Brazier Court further concluded that, unless the decedent's cause of action survived his death, the remedies provided by § 1983 would fail when the injury is death. The Brazier Court reasoned that "it defies history to conclude that Congress purposely meant to assure to the living freedom from such unconstitutional deprivations, but that, with like precision, it meant to withdraw the protection of civil rights statutes against the peril of death." Id. at 404.

After concluding that the decedent's claims did not terminate upon his death, the Brazier Court determined that there remained a "gap" between "the civil rights legislation . . . and the tolerant, hospitable construction to ameliorate the hardships of the common law rule." Id. at 407. To fill the gap left by federal law, the Brazier Court concluded that 42 U.S.C. § 1988 required courts to look to state law. Id. The Brazier Court then found that the statutory machinery in Georgia law gave effective redress of constitutional claims after death under § 1983. Id. at 409. In addition to deciding that state law should be used, the Brazier Court explained

8

how the law of Georgia filled the gap left by federal law in § 1983 claims where death resulted from constitutional violations.  See id. at 409.

At the time of Brazier, Georgia had two statutes that pertained to the survival of a tort claim after death – a survival statute and a wrongful death statute.  Id. at 407 n.15.[5]  In reversing the district court's dismissal of both the widow's individual claims and her claims as the decedent's administratrix, the Brazier Court stated, "[s]ince Georgia now provides both for survival of the claim which the decedent had for damages sustained during his lifetime as well as a right of recovery to his surviving widow and others for homicide . . . we need not differentiate between the two types of actions."  Id. at 409 (emphasis added).  The Brazier Court reasoned that "[t]o make the policy of the Civil Rights Statutes fully effectual, regard has to be taken of both classes of victims."  Id. (emphasis added).  In stating that the suit could be brought in Georgia by both the individual entitled

----

[5]At the time of Brazier, § 3-505 (1958 pocket part) of the Georgia Code provided:
No action for a tort shall abate by the death of either party, when the wrongdoer received any benefit from the tort complained of; nor shall any action, or cause of action, for the recovery of damages for homicide, injury to person, or injury to property abate by the death of either party; but such cause of action, in case of the death of the plaintiff, shall, in the event there is no right of survivorship in any other person, survive to the personal representative of the deceased plaintiff; and in case of the death of the defendant, shall survive against said defendant's personal representative.
Section 105-1302 (1933) of the Georgia Code provided for a wrongful death action:
A widow, or, if no widow, a child or children, minor or sui juris, may recover for the homicide of the husband or parent, the full value of the life of the decedent, as shown by the evidence.
Brazier, 293 F.2d at 407 n.15.

9

to bring a wrongful death action and the decedent's administratrix, the <u>Brazier</u> "court held that both Georgia's wrongful death and survival statutes were incorporated into federal law under § 1988." <u>Rhyne v. Henderson County</u>, 973 F.2d 386, 390 (5th Cir. 1992) (construing <u>Brazier</u>).[6] Finally, the <u>Brazier</u> Court determined that allowing the widow to proceed both individually and as the administratrix of her deceased husband's estate was not in contravention of the purposes of § 1983. <u>Brazier</u>, 293 F.2d at 409.

In this case, the Georgia Supreme Court has determined already that Carringer, as Newton's parent, has standing to assert a claim for the wrongful death of her son under O.C.G.A. §§ 51-4-1 to 51-4-2, 51-4-4 to 51-4-5 and 19-7-1(c)(1) because the spouse-murderer is precluded from recovery. <u>Carringer</u>, 2003 WL 1442301, at *5.[7] In turn, <u>Brazier</u> states that Georgia's wrongful death statute is incorporated into federal law under § 1988.[8] <u>See</u> <u>Baker v. Putnal</u>, 75 F.3d 190,

---

[6]We note that our reading of <u>Brazier</u> is consistent with the current Fifth Circuit's reading of the decision. <u>See</u> <u>Baker v. Putnal</u>, 75 F.3d 190, 195 (5th Cir. 1996) (stating "it is the law of this circuit that individuals who are within the class of people entitled to recover under Texas's wrongful death statute have standing to sue under §1983"); <u>Rhyne</u>, 973 F.3d at 391 (concluding that § 1988 incorporates Texas's wrongful death statute and that a plaintiff parent may recover "for her injury caused by the state's deprivation of her son's constitutionally secured liberty interests").

[7]Similar to <u>Brazier</u>, allowing Carringer, as a parent, to recover for the wrongful death of her son when the spouse-murderer is precluded from recovery is not in contravention of the purposes of § 1983.

[8]At the time of <u>Brazier</u>, Georgia's survival and wrongful death statutes were in completely different sections of the Georgia Code, <u>supra</u> footnote five. Although Georgia has since combined the two causes of action into one statute with different sections, as described in footnote one, they remain separate causes of action under Geogia law. <u>See, e.g.</u>, <u>Smith v. Mem.</u>

10

195 (5th Cir. 1996); Rhyne, 973 F.3d at 390; see also Walker v. Mortham, 158 F.3d 1177, 1188 (11th Cir. 1998) (under the prior precedent rule, this Court is bound to follow the decisions rendered by earlier panels).  Therefore, we conclude that in the circumstances of this case where the spouse-murderer is precluded from recovery, Carringer, as a parent, has standing to assert a § 1983 claim for the wrongful death of her son in violation of his constitutional rights.[9]

---

Med. Ctr., 208 Ga. App. 26, 27 (1993) (the survival of the action for pain and suffering is vested in the legal representative and is distinct from a wrongful death action).

[9]The right to wrongful death recovery under § 1983 has generated considerable debate amongst our sister circuits.  In fact, there are at least four different theories used by circuit courts to determine what claims after death may proceed under § 1983.  See 1C Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation Claims and Defenses §§13.3-13.7 (3d ed. 1997 & Supp. 2002) (discussing the two main theories and collecting cases).  For example, Brazier states that § 1988 permits courts to "borrow" state wrongful death statutes to the extent they are consistent with § 1983.  Brazier, 293 F.2d at 409.  Some circuits follow a constitutional approach; that is, to allow a claimant to argue that he had a relationship with the deceased that was constitutionally protected and that the homicide of the decedent destroyed that relationship and, therefore, violated the claimant's own protected constitutional rights.  See, e.g., Bell v. City of Milwaukee, 746 F.2d 1205, 1242-48 (7th Cir. 1984) (parent may assert constitutional claim for death of adult child, but siblings cannot sue under wrongful death theory); Trujillo v. Bd. of County Comm., 768 F.2d 1186, 1189 (10th Cir. 1985) (recognizing constitutional claims by parents and siblings, but only when defendant intended to destroy constitutionally protected relationship).  Other circuits have concluded that a parent does not have a liberty interest in the companionship of an adult child.  See, e.g., Butera v. District of Columbia, 235 F.3d 637, 656 (D.C. Cir. 2001).  Still, some circuits permit recovery of the damages for the harm done to the decedent, but not for the harm to the survivor, even though both are permitted under state law.  See, e.g., Andrews v. Neer, 253 F.3d 1052, 1063-64 (8th Cir. 2001) (en banc).  However, until the Supreme Court elects to decide the issue or this Court, sitting en banc, overrules Brazier, we are bound by Brazier's decision that under § 1988 Georgia's wrongful death statute is incorporated into § 1983.  Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir.1997) ("The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision.").  Although the Supreme Court has addressed § 1983 actions after death in two potentially relevant cases, see Moor v. County of Alameda, 411 U.S. 693 (1973) and Robertson v. Wegmann, 436 U.S. 584 (1978), it has not reached the issue raised and decided in Brazier.  In fact, the Supreme Court cited to Brazier as an example of the type of issue it was not addressing.  See Robertson, 436 U.S. at 594.

## III. CONCLUSION

We vacate the district court's dismissal of Carringer's state law claims against all three defendants. We also vacate the district court's grant of summary judgment to defendants Rogers and the City on Carringer's § 1983 claims. Finally, we remand this case to the district court for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**