# FOURTH DIVISION
## DOYLE, P. J.,
## REESE and MARKLE, JJ.

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 23, 2019**

# In the Court of Appeals of Georgia

A19A1230. MCIVER v. OLIVER.                              DO-043

DOYLE, Presiding Judge.

In this interlocutory appeal, Claud Lee McIver III ("McIver") challenges the denial of his motion to dismiss a wrongful death lawsuit filed against him and Patricia Diane Carter by Mary Margaret Oliver as the administrator of the estate of his deceased wife, Diane Smith McIver ("Diane"). McIver, who already has been found guilty of causing Diane's death by felony murder,[1] contends that the state court erred by concluding that Oliver has standing to sue under the wrongful death statute because the statute authorizes him, as the surviving spouse, to bring any wrongful

---

[1] See OCGA § 16-5-1 (c) ("A person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice.").

death claim. For the reasons that follow, we vacate the order of the state court and remand with direction to transfer the case to the superior court.

On appeal, we conduct a de novo review of a trial court's ruling on a motion to dismiss. Our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts.[2]

The relevant facts are not in dispute. The complaint alleges that McIver, Diane, and Carter were returning to Atlanta from a weekend away at the McIvers' family farm in Putnam, Georgia. Carter was driving a vehicle owned by the McIvers, and Diane rode in the front passenger seat, with McIver in the back seat behind her. As they drove into downtown Atlanta, McIver asked Diane to retrieve his handgun from the glove compartment, and she did so. Shortly thereafter, McIver suddenly and unexpectedly discharged the weapon, shooting Diane through the seat and striking her in the back. The complaint further alleges that instead of stopping and calling

---

[2] (Citations and punctuation omitted.) *Hendry v. Wells*, 286 Ga. App. 774, 781 (2) (650 SE2d 338) (2007).

2

911, McIver directed Carter to drive to the Emory Hospital emergency room. Carter did so, and Diane died at Emory Hospital three hours later.

Based on the shooting, McIver was indicted and found guilty by a jury of felony murder of Diane. Acting as the administrator of Diane's estate, Oliver filed this wrongful death action in the State Court of DeKalb County against McIver and Carter. The complaint alleges that McIver caused Diane's death by negligently discharging the firearm, and it alleges that Carter was negligent in her driving. Carter and McIver moved to dismiss the complaint on different grounds, and the state court granted Carter's motion in part and denied McIver's motion. Relevant to this appeal, the state court denied McIver's motion on two grounds: (i) Georgia's "Slayer Statute," OCGA § 53-1-5, treats McIver as though he has predeceased Diane for purposes of distributing her property and appointing personal representatives, and (ii) McIver cannot sue himself, so OCGA § 51-4-5(a) authorizes Oliver to bring the claim for the benefit of Diane's next of kin. The state court issued a certificate of immediate review of its denial of McIver's motion, and this Court granted McIver's application for interlocutory appeal.[3]

---

[3] Carter is not a party to this appeal.

1. McIver contends that the state court erred by concluding that Oliver has standing to bring this claim on the ground that the wrongful death statute gives him (and not any other party) the right to bring a wrongful death claim based on the death of his spouse. We disagree.

Our statutory analysis is guided by the following principles:

A statute draws its meaning, of course, from its text. Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its "plain and ordinary meaning," we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Though we may review the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it, where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends.[4]

---

[4] (Citations and punctuation omitted; emphasis omitted.) *Patton v. Vanterpool*, 302 Ga. 253, 254 (806 SE2d 493) (2017), quoting *Deal v. Coleman*, 294 Ga. 170, 172-173 (751 SE2d 337) (2013).

"The right to file a claim for wrongful death did not exist at common law; it is entirely a legislative creation and is authorized in Georgia by the Wrongful Death Act, OCGA § 51-4-1 et seq."[5] Georgia courts have described the statute in this way:

> The aim of these [wrongful death] statutes is to strike at the evil of the negligent destruction of human life, by imposing liability upon those who are responsible either directly through themselves or indirectly through their employees for homicides. It is not beyond the power of the legislature to attempt to preserve human life by making homicide expensive. "By making homicide expensive," the person who causes the wrongful death of another is forced to suffer a monetary "penalty to go to the person who is authorized to sue for the negligent homicide."[6]

Despite this context, McIver argues that he (and therefore not Oliver) is entitled to bring a wrongful death claim, relying on OCGA § 51-4-2 (a). That Code section provides: "The surviving spouse or, if there is no surviving spouse, a child or children, either minor or sui juris, may recover for the homicide of the spouse or parent the full value of the life of the decedent, as shown by the evidence." Based on

---

[5] *Carringer v. Rodgers*, 276 Ga. 359, 362 (578 SE2d 841) (2003).

[6] (Citation, punctuation, and emphasis omitted.) *Belluso v. Tant*, 258 Ga. App. 453, 454 (574 SE2d 595) (2002), quoting *Western & Atlantic R. Co. v. Michael*, 175 Ga. 1, 13 (165 SE 37) (1932).

5

this language alone, McIver argues that because he is Diane's surviving spouse, he retains the authority to bring a wrongful death claim for her death.

But this ignores the fact that McIver himself caused Diane's death, and "[a]lthough the law contemplates that there should be a right of recovery, it does not authorize a surviving spouse to benefit from his own wrong."[7] Well-settled Georgia law holds that "[a] person cannot sue himself; the same person cannot be both plaintiff and defendant in the same action, even in different capacities."[8] Such a suit is "void from its inception;"[9] accordingly, the law does not authorize McIver to sue himself for wrongful death as the surviving spouse of Diane, whom he feloniously killed. In other words, "the question is not the plain language of the statute[,] which orders a recovery for the surviving spouse, but whether [McIver] should be deemed

---

[7] *Belluso*, 258 Ga. App. at 456.

[8] *Connell v. Murray*, 205 Ga. App. 702, 703 (423 SE2d 304) (1992), citing *Perdue v. McKenzie*, 194 Ga. 356, 364 (2) (21 SE2d 705) (1942); *Langford v. Johnson*, 46 Ga. App. 444 (3) (167 SE 779) (1933). See also *Belluso*, 258 Ga. App. at 455 (stating that a suit against oneself is "a legal impossibility").

[9] *Connell*, 205 Ga. App. at 703.

6

a surviving spouse so as to hold the right of action for the wrongful death. And the answer to this question must be 'no.'"[10]

In light of this, we turn to OCGA § 51-4-5 (a) which provides: "When there is no person entitled to bring an action for the wrongful death of a decedent under Code Section 51-4-2 [death of spouse or parent] or 51-4-4 [death of child], the administrator or executor of the decedent may bring an action for and may recover and hold the amount recovered for the benefit of the next of kin." It is undisputed that Diane has no children, and as explained above, McIver is not "entitled to bring an action for the wrongful death of" Diane. Accordingly, OCGA § 51-4-5 (a) authorizes Oliver, as the administrator of Diane's estate, to bring this action.

Moreover, with respect to the fact that Carter also was named as a defendant, the Supreme Court of Georgia has stated that "[i]t is . . . plain that the legislature did not intend that a murdering spouse financially benefit from the murder by possessing the ability to pursue the right of action for the victim's death *against any other parties*

---

[10] *Carringer*, 276 Ga. at 364.

potentially liable for the homicide."[11] We see no reason to depart from this rule under the facts of this case.

We note that Oliver filed this action in the State Court of DeKalb County, which lacks equity jurisdiction. In cases similar to this one, Georgia appellate courts have characterized our analysis as a direction to the trial court to exercise its equitable power.[12] The remedy and legal determinations sought by Oliver did not invoke equitable jurisdiction initially, but in light of the equitable nature of the issues implicated by McIver's motion to dismiss, we vacate the state court's order and remand the case with direction to transfer the case to superior court.[13]

---

[11] (Emphasis supplied.) Id. at 364, citing OCGA §§ 53-1-5 (forfeiture of benefits of inheritance) & 33-25-13 (forfeiture of insurance proceeds).

[12] See, e.g., *Belluso*, 258 Ga. App. at 455 ("[I]t is within the equitable powers of the superior court to permit the prosecution of the wrongful death action by a parent when the surviving spouse is the alleged wrongdoer."); *Brown v. Liberty Oil & Refining Corp.*, 261 Ga. 214, 216 (2) (b) (403 SE2d 806) (1991) ("[T]he factual circumstances of this case demand the exercise of [equitable] powers to preserve the rights of the minor children," because the surviving spouse had abandoned the children and would not bring a claim on their behalf). Compare *Abraham v. Black*, 346 Ga. App. 229, 231-232 (816 SE2d 351) (2018) (physical precedent only) (affirming a state court's determination at law based on the application of the child abandonment statute, OCGA § 19-7-1 (b) (3), as opposed to an equitable determination).

[13] See *Blackmon v. Tenet Healthsystem Spalding, Inc.*, 284 Ga. 369, 371 (667 SE2d 348) (2008) (vacating the state court's order and remanding with direction to

8

*Judgment vacated; case remanded with direction. Reese and Markle, JJ.,*

*concur.*

---

transfer the case to superior court); *Laster v. Nat. Collegiate Student Loan Trust 2005-3*, 328 Ga. App. 542, 542 (762 SE2d 430) (2014) ("The manifest purpose of [the Georgia Constitution's direction to transfer to the proper court] is to prevent parties from being penalized when their attorneys . . . make a mistake regarding the complex, highly technical rules that govern jurisdiction and venue and inadvertently file a case in the wrong court. This case fits that description to a tee.") (punctuation omitted).