S00A1397. TESSMER v. THE STATE.
(539 SE2d 816)

THOMPSON, Justice.

Ethel Elizabeth Tessmer was convicted of felony murder, predicated on the underlying felony of aggravated assault, in connection with the shooting death of her husband, David Newton. This appeal follows the denial of her motion for a new trial.[1]

1. Viewing the evidence in a light to uphold the verdict, we find the following: Tessmer, a Barnesville police officer, was head of the

---

[19] *Wall v. State,* 269 Ga. 506, 509 (500 SE2d 904) (1998); *Ward v. State,* 271 Ga. 648, 651 (520 SE2d 205) (1999).

[1] Newton was killed on January 14, 1998. The grand jury indicted Tessmer on March 2, 1998, and charged her with malice murder, felony murder, and voluntary manslaughter. Trial commenced on August 10, 1998, the jury returned its verdict on August 15, 1998, and Tessmer was sentenced to life in prison the same day. Tessmer's timely filed motion for a new trial was denied on February 2, 2000, and Tessmer filed a notice of appeal on February 22, 2000. The appeal was docketed in this Court on May 5, 2000, and orally argued on July 17, 2000.

Domestic Violence Task Force; she had never been married until she married Newton in September 1997.

Newton was an alcoholic and convicted felon. Tessmer's marriage to Newton was punctuated by Newton's alcoholic outbursts, and his verbal, physical and sexual abuse. Early in January 1998, the abuse escalated to the point that Tessmer left home to live in a motel. However, she returned after only a few hours because she felt that Newton needed her help and that he could be rehabilitated.

On January 9, 1998, Tessmer's mobile home burned to the ground; Tessmer and Newton lost all of their possessions. After a brief stay at the home of Tessmer's parents and a motel, the couple went to live in an apartment. They had two twin mattresses which were placed together on the floor.

From the time the couple moved into the apartment, until Newton's death five days later, Newton was intoxicated and belligerent. He put his fist through a wall in the apartment; he physically abused Tessmer and gave her a bloody nose.

On the night in question, the abuse escalated even more. Newton forced Tessmer to have sex with him. Then he physically abused Tessmer by putting her in several "wrestling holds": he wrenched her arm, bent her fingers, and squeezed her until she could hardly breathe.

Later, when the situation calmed down, Tessmer moved to the floor next to her mattress, and Newton sat on his mattress. Although she did not consider Newton to be a threat at that time, Tessmer removed her .40 caliber service pistol from under her mattress. She pointed it at Newton[2] and put her finger on the trigger because she wanted to scare him,[3] and was just "tired of all of it." The pistol discharged and Newton was shot in the chest.

According to Tessmer, Newton grabbed her hands as she held her pistol, and he put his thumb in the trigger well, causing the pis-

---

[2] In the main, Tessmer denied that she pointed the gun at Newton. At one point, however, in a statement she gave to the police, Tessmer acknowledged that she did so:

Officer: How did it happen, you know, okay.
Tessmer: Okay.
Officer: So –
Tessmer: I mean I did put the gun under there.
Officer: Yeah, now, did you point it at him and just squeeze the trigger, or did he grab it?
Tessmer: He grabbed it.
Officer: He grabbed it?
Tessmer: The gun.
Officer: *Were you pointing it at him?* You know, you said if, if you're laying down on the floor and you had the gun at your side —
Tessmer: *Yeah.*

(Emphasis supplied.)

[3] Tessmer acknowledged that that conduct constituted aggravated assault.

tol to fire.[4] However, no gunshot residue was found on Newton's hands. Moreover, the medical examiner opined that, since Newton was so intoxicated, it was highly unlikely that he would have been able to place his thumb in the trigger well.

The evidence was sufficient to enable any rational trier of fact to find Tessmer guilty beyond a reasonable doubt of felony murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Stiles v. State*, 264 Ga. 446 (448 SE2d 172) (1994).

2. The trial court charged the jury on the law of aggravated assault, and, in that regard, it included instructions on the defenses of accident and justification. See *Turner v. State*, 262 Ga. 359 (418 SE2d 52) (1992) (jury charges on both accident and justification authorized when defendant asserts his weapon discharged accidentally while he was defending himself). The trial court went on to define felony murder and to instruct the jury that the underlying felony in this case was aggravated assault. However, the trial court charged that accident was not a defense to felony murder:

> If it is shown by the evidence beyond a reasonable doubt that the injury to the alleged victim occurred by the discharge of a gun held by the accused and used in an attempt to place the alleged victim in reasonable apprehension of immediately receiving a violent injury, the accused would not be able to claim the defense of accident or misfortune even if the discharge of the gun was unintentional.[5]

Tessmer asserts the trial court erred by instructing the jury that accident was a defense to the underlying felony of aggravated assault, but it was not a defense to felony murder. We disagree.

Under Georgia law "[a] person . . . commits the offense of murder when, in the commission of a felony, he [or she] causes the death of another human being, irrespective of malice." OCGA § 16-5-1 (c). Malice means the intent to take a life without legal justification or mitigation. *Brown v. State*, 270 Ga. 601, 604 (512 SE2d 260) (1999). Thus, malice, or the intent to kill, is not an element of felony murder. "Proof of felony murder does not require proving malice or the intent to kill, but only that the defendant had the requisite criminal intent to commit the underlying felony. *Franklin v. State*, 268 Ga. 865, 866 (1) (494 SE2d 327) (1998)." *Martin v. State*, 271 Ga. 301, 303 (1) (518

---

[4] Tessmer asserted that Newton was suicidal and wanted to kill himself.

[5] The trial court continued by instructing the jury that *justification* would be a defense to felony murder: "Should you find that the defendant is not able to claim the defense of accident or misfortune with respect to your consideration of felony murder . . . you would still be authorized to consider whether or not her conduct was justified, as I have previously instructed you."

SE2d 898) (1999). It follows that the trial court did not err in charging the jury that, while accident can be a defense to the underlying felony of aggravated assault, it cannot be a defense to a felony murder predicated upon the underlying felony of aggravated assault. See *Turner v. State*, supra at 361 (3), in which this Court approved a charge which is nearly identical to the charge in question so long as it is given with an appropriate charge on the law of accident or misfortune. After all, mens rea is a necessary element of aggravated assault; but it is not a separate component of felony murder.

*Turner v. State*, supra at 359 (2), is inapposite insofar as it reversed the trial court for refusing to charge on both accident and self-defense. In that felony murder case, the trial court refused to charge the jury on the law as to both justification and accident, finding the charges to be mutually exclusive. The trial court did charge the law of self-defense, but not accident. This court reversed, holding that the facts of the case presented a situation where the law on both accident and self-defense should be charged.

In this case, unlike *Turner*, the trial court did charge the law on both accident and self-defense, albeit with respect to the underlying felony only. Inasmuch as the trial court gave a complete charge on the underlying felony of aggravated assault, including the defenses of justification and accident, and also instructed the jury that it could not convict for felony murder unless Tessmer was found guilty of the underlying felony of aggravated assault, we find the charge to be complete and correct.

3. Relying upon *Edge v. State*, 261 Ga. 865, 867, fn. 3 (414 SE2d 463) (1992), Tessmer asserts the trial court committed reversible error because it failed to charge the jury that if it found the aggravated assault was the result of provocation and passion, it could not find felony murder, but would be authorized, but not required, to find voluntary manslaughter. See *Harrison v. State*, 268 Ga. 574, 576 (492 SE2d 218) (1997); *Russell v. State*, 265 Ga. 203, 205 (455 SE2d 34) (1995). We disagree.

> We do not require the trial courts to follow an exact formula in instructing juries so long as the charge as a whole ensures that the jury will consider whether evidence of provocation and passion might authorize a verdict of voluntary manslaughter.

*Suah v. State*, 271 Ga. 89, 90 (2) (515 SE2d 614) (1999). Viewing the charge as a whole, we find that the jury was instructed properly that it should first consider evidence of passion and provocation to determine whether Tessmer was guilty of voluntary manslaughter. Thus, unlike *Harrison v. State*, supra, the trial court did not give an

improper sequential charge. Furthermore, the verdict form demonstrates that the jury followed the trial court's instruction — it considered voluntary manslaughter and found Tessmer "not guilty" of that offense. Thus, the purpose of *Edge* was achieved. *Lajara v. State*, 263 Ga. 438, 440 (435 SE2d 600) (1993) (giving of sequential charge is not reversible error where verdict form demonstrates that jury considered and rejected offense of voluntary manslaughter).

4. The trial court did not err in permitting an expert to testify in rebuttal that, in his opinion, Tessmer was not suffering from the battered person syndrome, and that she did not believe that force was necessary to avoid death or great bodily injury. On direct examination, Tessmer's own expert averred that she did suffer from the battered person syndrome and did believe death or great bodily injury was imminent. Thus, the State's expert rebutted the testimony of Tessmer's expert. Contrary to Tessmer's assertion, the State's expert did not comment on Tessmer's veracity — he simply commented on the applicability of the battered person syndrome to the facts of this case.

5. Of the 30 potential jurors, 17 were female and 13 were male. Tessmer used 9 of 12 peremptory challenges to strike male jurors. The State challenged Tessmer's strikes, asserting she had engaged in gender discrimination.

The trial court determined that the State set forth a prima facie case of gender discrimination, and it called upon Tessmer to come forward with gender-neutral reasons for her strikes. Tessmer's counsel explained why she struck the male jurors. As to Willie Williams, Tessmer's counsel said that she found him to be very soft spoken and did not think he would stand by his convictions. She added that Williams was a veteran of the army. The State countered by pointing out that Tessmer did not strike soft spoken women jurors, nor did she strike another army veteran. The trial court determined that the strike was exercised in a discriminatory manner and it ordered that Williams be seated on the jury.

Tessmer asserts the trial court impermissibly shifted the burden of persuasion to her when it considered the State's challenge to her strike. In this regard, Tessmer argues that the trial court erroneously rejected her gender-neutral explanation and concluded prematurely that that explanation was pretextual. We disagree.

The trial court must conduct a three-step test to evaluate claims that a party used peremptory challenges in a gender discriminatory manner. *Chandler v. State*, 266 Ga. 509, 510 (467 SE2d 562) (1996). First, the opponent of the strike must set forth a prima facie case of discrimination. At that point, the proponent of the strike can be called upon to give a neutral explanation for the strike. Then, and only then can the trial court decide whether the opponent of the

strike proved gender discrimination. Id. The important thing to remember is that, while the burden of production shifts at step two, the burden of persuasion always rests with the opponent of the strike.

The record shows that the trial court engaged in the entire three-step process. It heard from the State and found a prima facie case of gender discrimination. The burden of production shifted to Tessmer and the trial court considered her explanation. Then the trial court heard and considered the State's response, and it found gender discrimination. The trial court did not end its analysis at step two; it did not shift the burden of persuasion to Tessmer.

6. In a motion for a new trial, Tessmer asserted the State violated *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), because it failed to disclose a conversation that an assistant district attorney had with Newton's mother, Deborah Carringer. In this regard, Tessmer claims that, had the conversation been disclosed, she would have been able to impeach Carringer by showing that she had a motive to testify falsely.[6]

The sum total of Carringer's conversation with the assistant district attorney was as follows: Carringer told the assistant district attorney that she was thinking about sending an ante litem notice to sue the city of Barnesville for Newton's murder, but she did not know what she was going to do. The assistant district attorney replied that he could not advise her and that she would have to consult with another attorney.

The burden is on defendant to establish a *Brady* violation, *Hicks v. State*, 232 Ga. 393, 396 (207 SE2d 30) (1974), by showing that: (1) the State possessed information favorable to the defendant; (2) the defendant did not possess the evidence nor could he obtain it with due diligence; (3) the prosecution suppressed the evidence; (4) a reasonable probability exists that the outcome of the trial would have been different if the evidence had been disclosed. *Burgeson v. State*, 267 Ga. 102 (475 SE2d 580) (1996).

Tessmer has failed to establish the first, second, and fourth elements. After all, the assistant district attorney did not know whether Carringer presented an ante litem notice to the city. He only knew that she was "thinking" about it. That information, in and of itself, was not favorable to Tessmer. Moreover, the fact that Carringer went ahead and presented the city with an ante litem notice could have been obtained by Tessmer by the exercise of reasonable diligence. Finally, it cannot be said that there is a reasonable probability that

---

[6] We note that, in her *Brady* motion, Tessmer only sought information as to whether any witness was a convicted felon. Nevertheless, we treat this enumeration of error as if Tessmer's *Brady* motion was more inclusive.

the outcome of the trial would have been different if the information had been disclosed.[7]

7. Pointing to Carringer's ante litem notice and subsequent suit against the city, Tessmer also sought a new trial on the basis of newly discovered evidence. The trial court denied the motion and Tessmer assigns error upon that ruling. We find no error.

> It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

(Punctuation omitted.) *Timberlake v. State*, 246 Ga. 488, 491 (271 SE2d 792) (1980).

Evidence that Carringer intended to sue the city would have done nothing more than discredit Carringer. Thus, it cannot be said that the trial court abused its discretion in denying Tessmer's motion for a new trial based on newly discovered evidence. See *Kitchens v. State*, 228 Ga. 624, 626 (187 SE2d 268) (1972) (motion for new trial on ground of newly discovered evidence is addressed to the sound discretion of trial court).

*Judgment affirmed. All the Justices concur, except Benham, C. J., Fletcher, P. J., and Hunstein, J., who dissent.*

HUNSTEIN, Justice, dissenting.

The outcome of this case hinged on whether the jury believed it could consider accident as a defense to felony murder. Inasmuch as the jury was directed by the trial court it could not consider the defense of accident when deciding whether Tessmer was guilty of felony murder, I must dissent. The evidence overwhelmingly demonstrates that Tessmer and Newton were involved in an emotionally, physically and sexually abusive relationship caused in large part by Newton's alcoholism. In the course of their abbreviated four month marriage, Newton, who drank heavily, was arrested three times for driving under the influence, appeared late for his court date where he then registered a .29 on the alco-sensor test, was held in contempt of court and incarcerated for more than twenty days. Newton exhib-

---

[7] See Division 7, infra.

ited controlling and erratic behavior during the marriage. He made numerous calls to Tessmer's place of employment to check on her and monitored her phone calls. There were constant demands for sexual intercourse and continual disregard of Tessmer's refusals of sex. By January 1998, the physical abuse escalated to the point that Tessmer left for a short time.

In the days before his death, Newton remained extremely intoxicated, combatant, and incoherent. As their home was burning to the ground, Newton argued with firefighters, demanding that they go into the burning home to retrieve his alcohol. He punched a hole in the wall of the apartment they moved into after the fire. During an argument the night before the shooting, Newton hit Tessmer, pushed her against a night stand, bloodied her nose and wrenched her elbow. The following day, when Tessmer refused to have sex with Newton, he raped her. After the rape, he continued the abuse by forcing her already injured elbow behind her back, bending her fingers until they were almost broken, and wrapped his legs around her midsection in a wrestling hold until she could barely breathe. At the end of the assault, Tessmer lay on the floor afraid. She admits that she thereafter pulled out the gun which she had hidden away from Newton and held it cradled in her hand in order to scare Newton and prevent him from coming at her again.[8] In numerous statements to police, Tessmer stated Newton then diverted her attention, reached for the gun, and during the struggle pushed her hand against the trigger causing it to fire.

Based on this evidence of record, the trial court charged the jury on the indictment, defined malice murder, felony murder, and aggravated assault, and instructed the jury on the defenses of accident and justification. The court then instructed the jury that accident is not a defense to the offense of felony murder and could not be considered by the jury in deciding the guilt of the defendant as to the felony murder count of the indictment. Under the law of this State, however, accident can be a defense to felony murder and I believe the trial court erred in instructing the jury otherwise.

Under Georgia law, a person commits malice murder when he acts with the unlawful intention to kill without justification or mitigation. OCGA § 16-5-1 (a) and (b). A person commits the crime of felony murder "when, in the commission of a felony, he causes the death of another human being irrespective of malice." OCGA § 16-5-1 (c). While I agree with the majority that proof of felony murder does not

---

[8] Contrary to the majority opinion, there is absolutely no evidence in the record that Tessmer pointed the gun at Newton. In each of her statements to police and throughout her testimony at trial, Tessmer described in detail how she held the gun flat in her hand with the gun barrel pointed away from Newton at a 90 degree angle.

require proving malice or the intent to kill, Maj. Op. at 222, felony murder does require "that the defendant possess the requisite criminal intent to commit the underlying felony." *Holliman v. State*, 257 Ga. 209, 210 (1) (356 SE2d 886) (1987). See *Lattimore v. State*, 265 Ga. 102 (3) (454 SE2d 474) (1995). Accord *Edge v. State*, 261 Ga. 865-866 (2) (414 SE2d 463) (1992) (felony murder depends on transfer or imputation of malice from mens rea of felony to the killing). By definition, then, a defendant found guilty of felony murder based on the underlying felony of aggravated assault must be found to possess the requisite intent to commit aggravated assault. The trial court in this case instructed the jury that accident is not a defense to the crime of felony murder, thereby impermissibly relieving the State of its burden of proving the requisite intent for the underlying felony.

There is no question that accident is a valid defense to the intent required to prove aggravated assault and, must, therefore, also be a valid defense to the imputed intent required to prove felony murder. See *Martin v. State*, 268 Ga. 682 (6) (492 SE2d 225) (1997); *Rameau v. State*, 267 Ga. 261 (1) (477 SE2d 118) (1996) (jury properly instructed on defense of accident to charges of aggravated assault). Because the facts of this case support the defense of accident and the trial court's instruction removed the defense from the jury's consideration as to the felony murder count, I dissent to the majority opinion.

I am authorized to state that Chief Justice Benham and Presiding Justice Fletcher join in this dissent.

DECIDED NOVEMBER 30, 2000 —
RECONSIDERATION DENIED DECEMBER 14, 2000.

*Katz, Flatau, Popson & Boyer, Sandra J. Popson,* for appellant.
*Richard G. Milam, District Attorney, Paul E. Hemmann, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.