306 Ga. 417
FINAL COPY

S19A0598.  SCOTT v. THE STATE.

ELLINGTON, Justice.

Jeremy Scott was convicted of felony murder, aggravated assault, possession of a firearm during the commission of a felony, and criminal use of a firearm with an altered identification mark in connection with the death of Romondo Ashley.[1] Scott contends that

---

[1] The shooting occurred on December 20, 2014. On March 18, 2015, a Chatham County grand jury indicted Scott for malice murder (Count 1), felony murder (Count 2), possession of a firearm during the commission of a felony (Counts 3, 5, 7, 9), aggravated assault (Counts 4, 6, 8), and criminal use of a firearm with an altered identification mark (Count 10) in connection with the shooting death of Romondo Ashley and the aggravated assaults of Arianna and Dionna Kearse. Following a jury trial held on October 27-30, 2015, Scott was found guilty of felony murder (Count 2), possession of a firearm during the commission of a felony (Counts 3, 5), aggravated assault (Count 4), and criminal use of a firearm with an altered identification mark (Count 10). The jury acquitted him of the remaining counts, which included those counts alleging crimes against Arianna and Dionna Kearse. On January 5, 2016, the trial court sentenced Scott to serve life in prison for felony murder; five years in prison for possession of a firearm by a convicted felon, to run consecutively to his murder conviction; and five years on probation for criminal use of a firearm with an altered identification mark, to run concurrently with his firearm possession sentence. The remaining counts merged. Scott filed a timely motion for a new trial on January 6, 2016, which he later amended on August 28, 2018. Following a hearing, the trial court denied the motion on October 1, 2018. Scott filed a timely notice of appeal, and his case was docketed in this

his trial counsel was ineffective and that the trial court erred by giving the jury an incomplete and misleading charge on accident. Finding no reversible error, we affirm.

Viewed in the light most favorable to the verdicts, the record shows the following. On December 20, 2014, Ashley was visiting his girlfriend, Arianna Kearse, and their daughter at Arianna's house. Arianna's sister, Dionna Kearse, and others were also present. Around 1:00 a.m., Ashley woke Arianna and told her that her ex-boyfriend, Scott, was outside her house in his brother's truck. Arianna had dated Scott briefly after being in a relationship with Ashley, but she and Scott broke up in November. Thereafter, she resumed her relationship with Ashley.

When Arianna heard that Scott was outside, she woke her sister. The two women went outside to ensure that there was no friction between Scott and Ashley, given that Ashley had gone onto the front porch to wait for a ride home from a friend. As Arianna and

Court for the April 2019 term and submitted for decision on the briefs.

Dionna tried to convince Ashley to come back inside, Scott walked toward the porch. The sisters told Scott to leave, but Scott started cursing, asking Arianna if she was having sex with Ashley. Angered, Ashley swung his fist at Scott, but missed. The sisters pulled Ashley away by his arms, attempting to get him back inside. Scott followed, pulled a gun from behind him, and shot Ashley twice in the head. Scott then walked back to his brother's truck and left.

Ashley collapsed onto the porch, bleeding profusely and shouting his daughter's name. Neighbors called the police while Arianna and Dionna tried to comfort Ashley until help arrived. Ashley later died at the hospital. One bullet entered his cheek and exited through the back part of his ear; another entered his forehead and passed through his brain before lodging in his skull.

Arianna and Dionna told the responding officers what had happened and both identified Scott as the shooter. The sisters also later identified Scott from a photographic lineup. Arianna took the police to Scott's home and showed them the truck that he had driven to her house. While Arianna was aiding the police with the

investigation, Scott called her and asked her if she had "told on him." Officers secured search warrants for Scott's property. During their search, the officers found a revolver hidden under a shed. The weapon contained three empty shell casings and part of its serial number had been filed away. A ballistics expert determined that the bullet the medical examiner had removed from Ashley's skull had been fired from the revolver. The weapon was functional and it took about ten-and-a-half pounds of pressure to pull the trigger. The expert testified that it is "highly unlikely" that the revolver would have fired absent pressure on the trigger.

In a recorded interview, Scott told the police that he felt threatened by Ashley. He claimed that he took the gun from his pocket, pointed it at Ashley, and then, using the revolver as a blunt instrument, struck Ashley on the head with it in self-defense. He claimed that the gun accidentally discharged during the altercation.

1. Scott does not dispute the legal sufficiency of the evidence supporting his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that,

4

when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Scott guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

2. During closing argument, the prosecutor argued that the jury could infer malice from Scott's decision to leave the scene of the shooting without calling the police, rendering aid, or giving any explanation for what he had done.[2] Scott contends that the prosecutor's argument improperly commented on his pre-arrest

---

[2] Scott complains about this portion of the prosecutor's closing argument:
And again, he walked away afterward. He didn't stay to check on anybody. He didn't render aid. He matter-of-factly and at a slow pace walks away, that's an abandoned and malignant heart. . . . Did he ask if anybody else was hurt? Did he stick around to find out? Did he ask if any one of those stray bullets went into the house and hit any one of these little bitty children that he had been around? No.

5

silence in violation of this Court's holding in *Mallory v. State*, 261 Ga. 625, 629-630 (5) (409 SE2d 839) (1991), and that, therefore, his trial counsel was ineffective for failing to object and preserve the error for appellate review.

To prevail on an ineffective assistance of counsel claim, a defendant must show that his counsel's performance was professionally deficient and that such deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U. S. 668, 687-695 (III) (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (3) (689 SE2d 280) (2010). To satisfy the first prong, deficient performance, a defendant must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." (Citation omitted.) *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688 (III) (A). This requires a defendant to "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's

6

decisions were made in the exercise of reasonable professional judgment." (Citations and punctuation omitted.) *Simmons v. State*, 299 Ga. 370, 375 (3) (788 SE2d 494) (2016). To satisfy the second prong, prejudice, the defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland,* 466 U. S. at 694 (III) (B). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." (Citations omitted.) *Lawrence v. State*, 286 Ga. 533, 533-534 (2) (690 SE2d 801) (2010).

When Scott was tried in 2015, the new Evidence Code was in effect. At that time, whether the *Mallory* rule had been abrogated by the new Evidence Code was unsettled and subject to dispute. See *Eller v. State*, 303 Ga. 373, 384 (IV) (E) (811 SE2d 299) (2018) ("We have specifically declined thus far to decide whether *Mallory* applies in trials after January 2013." (citations omitted)). Shortly after

Scott's appeal was docketed, however, this Court expressly held that "*Mallory*'s categorical, bright-line rule excluding all comment upon a defendant's silence or failure to come forward as far more prejudicial than probative . . . was abrogated by the new Evidence Code." (Citation, punctuation, and footnote omitted.) *State v. Orr*, 305 Ga. 729, 739 (3) (827 SE2d 892) (2019).

> Now that we have squarely held that *Mallory* was abrogated by Georgia's new Evidence Code, it is clear that a defendant cannot prevail on a claim of ineffectiveness on the basis that his trial counsel failed to rely on a case that was not applicable to his trial.

*Jackson v. State*, 306 Ga. ___, ___ (5) (a) (___ SE2d ___) (2019).

3. Scott contends the trial court erred by giving the jury incomplete and misleading instructions on his defense of accident. He argues that the trial court should have instructed the jury that accident was a legal defense to aggravated assault, the felony upon which his felony murder and firearm possession counts were based. Further, he argues that the trial court should have informed the jury that if the jury found the defense of accident to be applicable to the underlying felony of aggravated assault, the jury's verdict should be

8

not guilty on the charges premised on this predicate felony. Because Scott did not object on this ground before the jury retired to deliberate, his claim may be reviewed on appeal for "plain error" only. OCGA § 17-8-58 (b). Plain error review has a four-part analysis:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

(Citations omitted.) *Walker v. State*, 301 Ga. 482, 485 (2) (801 SE2d 804) (2017).

The record shows that the trial court fully and accurately

9

charged the jury on the defense of accident.[3] The trial court's

instruction closely follows the language of OCGA § 16-2-2, which

provides that a person "shall not be found guilty of any crime

committed by misfortune or accident where it satisfactorily appears

there was no criminal scheme or undertaking, intention, or criminal

negligence." It also tracked the pattern jury instruction on accident.

See Suggested Pattern Jury Instructions, Vol. II: § 3.50.10 (4th ed.

2007, updated August 2018). Because the accident charge applies to

---

[3] The trial court instructed the jury:

I charge you, ladies and gentlemen, that no person shall be found guilty of any crime committed by misfortune or accident in which there is no criminal scheme[,] undertaking or intention. An accident is an event that takes place without one's foresight or expectation[,] which takes place or begins to exist without design. If you find from the evidence that the incident that is the subject matter of this case occurred as the result of misfortune or accident and not as a result of a criminal undertaking or criminal negligence, then it would be your duty to acquit the Defendant.

When the issue of accident is raised[,] the burden is on the State to negate or disprove it beyond a reasonable doubt. Any evidence as to misfortune or accident should be considered by you in connection with all the other evidence in this case. If in doing so you should entertain a reasonable doubt as to the guilt of the accused, it would be your duty to acquit the Defendant. On the other hand, should you believe from the evidence as a whole that the Defendant is guilty beyond a reasonable doubt[,] you may convict.

"any crime," with the exception of felony murder as explained below, it necessarily applies to aggravated assault.

The court also charged the jury that, to convict Scott for felony murder, the State was required to prove beyond a reasonable doubt that the homicide occurred during the commission of the predicate offense of aggravated assault with a deadly weapon. Again, the court gave instructions that tracked the pattern jury instructions for aggravated assault and felony murder predicated on aggravated assault with a deadly weapon.[4] Finally, the court correctly instructed the jury that the defense of accident did not apply to felony murder based on aggravated assault if the jury found that the aggravated assault was intentional.

> With respect to the charge of felony murder, ladies and gentlemen, if it is shown by the evidence beyond a reasonable doubt that the injury to the alleged victim occurred by the discharge of a gun held by the accused and used in an attempt to place the alleged victim in reasonable apprehension of immediately receiving a violent injury, the accused would not be able to claim the offense [sic] of accident or misfortune, even if the

[4] See Suggested Pattern Jury Instructions, Vol. II: §§ 2.10.20, 2.10.30 (felony murder) and §§ 2.20.20, 2.20.22 (aggravated assault with a deadly weapon) (4th ed. 2007, updated January 2019).

11

discharge of the gun was unintentional.

Should you find that the Defendant was not able to claim the defense of accident or misfortune with respect to your consideration of felony murder, you would still be authorized to consider whether or not his conduct was justified as I have previously instructed you. Now, ladies and gentlemen, if you do not believe that the Defendant is guilty or if you have any reasonable doubt as to the Defendant's guilt on the offenses charged, then it would be your duty to acquit the Defendant as to that offense.

Scott has not shown that this is an incorrect statement of the law or that it would tend to mislead the jury in its application of the defense of accident to the crime of aggravated assault. See *Tessmer v. State*, 273 Ga. 220, 223 (2) (539 SE2d 816) (2000) ("[W]hile accident can be a defense to the underlying felony of aggravated assault, it cannot be a defense to a felony murder predicated upon the underlying felony of aggravated assault" when the aggravated assault itself is not accidental.).

Further, the charge was authorized by the evidence. In support of his theory of self-defense, Scott presented evidence that he intentionally drew a revolver, intentionally aimed it at Ashley, and intentionally struck him with it. He alleged that, during the course

12

of these intentional acts, the revolver discharged twice, and that Ashley was mortally wounded. Although the resulting homicide could have been justified under a theory of self-defense (and the jury was so charged), the homicide could not be accidental, as a matter of law, if the jury found that the actions giving rise to the predicate offense of aggravated assault were intentional. See *Tessmer*, 273 Ga. at 222-223 (2). See also *Oliver v. State*, 274 Ga. 539, 540 (2) (554 SE2d 474) (2001) ("Unlike malice murder, felony murder does not require intent to kill; rather, the defendant only must have intended to commit the underlying felony." (footnote omitted)).

Given that Scott has not shown that the trial court's charge was erroneous, he has failed to establish an essential prerequisite for a finding of plain error. See *Blake v. State*, 292 Ga. 516, 517-518 (2) (739 SE2d 319) (2013) (finding no error, much less any plain error, where trial court's instruction was an accurate statement of the law); *Dukes v. State*, 290 Ga. 486, 489 (5) (722 SE2d 701) (2012) (same). Therefore, this claim of error is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 5, 2019.

Murder. Chatham Superior Court. Before Judge Freesemann.

*Robert L. Persse*, for appellant.

*Meg E. Heap, District Attorney, Bradley R. Thompson, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.