**FIFTH DIVISION
MCFADDEN, C. J.,
RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**May 25, 2021**

# In the Court of Appeals of Georgia

A21A0165. ARY v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Thomas Franklin Ary guilty of three counts of child molestation. Following the denial of his motion for new trial, Ary appeals, contending that the evidence was insufficient to support his convictions, the trial court erred in admitting other acts evidence and in its charge to the jury on other acts evidence, his trial counsel was ineffective in several respects, and cumulative error prevented him from receiving a fair trial. For the following reasons, we affirm Ary's convictions.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, with the defendant no longer enjoying a presumption of innocence. See *Carolina v. State*, 276 Ga. App. 298, 300 (1) (623 SE2d 151) (2005). We neither weigh the evidence nor determine witness credibility, which are

tasks that fall within the exclusive province of the jury, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. Id.; see also *Whorton v. State*, 318 Ga. App. 885, 885 (735 SE2d 7) (2012).

So viewed, the evidence shows that the victim, J. H., began attending after-school and summer camp programs at Pak's Karate when she was six years old. Ary was one of J. H.'s karate teachers at Pak's. J. H., who was eleven years old at the time of trial, testified that when she was seven years old, Ary "touched" her. She was sitting on Ary's lap in the back of the movie room at Pak's, which was dark, when he "touched [her] on [her] privates" with his hand inside her pants but on top of her underwear and squeezed. J. H. testified that after they moved the movie room from the homework building to the main building, the same thing happened again. Another time, J. H. volunteered to help Ary fix something in the bathroom at Pak's, and when she was in the bathroom with Ary, he closed the door, picked her up, and touched her private part to his. Then, he "kind of would go forward and back."

J. H. testified that she told her friend M. K., who was another student at Pak's, that Ary had touched her. This happened after M. K. first told J. H. about Ary touching M. K. J. H. did not tell her mother about Ary's actions until sometime later,

2

when a registered sex offender moved in across the street from their house and her mother had a talk with J. H. about inappropriate touching. J. H.'s mother asked her if anyone had ever touched her in her private places, and J. H. started crying and said Ary had touched her. J. H. was eight or nine when she told her mother. When asked why she waited so long to tell her mother, J. H. testified that she was scared because Ary had shown her his gun one day in his car.

J. H. was taken to a child advocacy center and interviewed by an expert in forensic interviewing. The expert testified that she had conducted 98 forensic interviews of children. According to the expert, it is common for a child not to disclose abuse immediately. A recording of the forensic interview was played for the jury, and J. H. identified Ary at trial as the man who "touched" her at Pak's.

M. K.'s mother testified that she took M. K. in for a forensic interview after she was notified by the District Attorney's office that M. K.'s name had come up during a proceeding. At that point, M. K. had not disclosed anything to her mother. M. K.'s mother testified that, to the best of her knowledge, M. K. did not disclose anything in that interview. Later, after M. K. was subpoenaed by Ary, M. K.'s mother told her that something had happened to J. H. M. K. then told her mother that J. H. had told

her something had happened. However, M. K. still did not tell her mother that anything had happened to her.

A school counselor testified that she conducted a "good touch/bad touch" body safety and personal safety program at M. K.'s elementary school in May 2015. After the counselor conducted the program with M. K.'s fifth grade class, M. K. asked to speak to her. M. K. told the counselor that what she had been talking about in the good touch/bad touch program had happened to her. Although M. K. did not give the name of the person who had done something like that to her, she indicated it was the "karate man." M. K. told the school counselor that she had been interviewed in the past about whether someone had ever touched her, but she had not felt comfortable telling anyone and had said that it did not happen. M. K. indicated she had been afraid to tell anyone. After she talked to the school counselor, M. K. told her mother that she had lied before and that Ary had touched her between her legs.

M. K., who was eleven years old at the time of trial, testified that the first time her mother asked her if something had happened to her at Pak's Karate, she told her, "No." M. K. testified that she decided to tell her school counselor after the good touch/bad touch program. At trial, she identified Ary as the person who inappropriately touched her. She testified that she was sitting on Ary's lap watching

4

a movie when he touched her between her legs, over her clothes, and "kind of moved his fingers." When asked how she knew it was not an accident, she said that she thought it was an accident at first, but when he tried to do it again, she realized it was not. The next day, M. K. and J. H. told each other what Ary had done to them.

Ary was indicted for five counts of child molestation. Three of the counts accused Ary of molesting J. H., and two of the counts accused him of molesting another child, R. W. When the case was initially tried before a jury in June 2014, the jury found Ary not guilty on the two counts accusing him of molesting R. W., but was deadlocked on the counts accusing him of molesting J. H. M. K. did not testify at the June 2014 trial. The case was retried before a jury in 2015 as to the counts accusing Ary of molesting J. H. During this trial, testimony regarding M. K.'s molestation by Ary was admitted, and the jury found Ary guilty of all three counts. This appeal followed the denial of Ary's motion for new trial.

1. Ary contends that the evidence was insufficient to support his convictions.[1] We disagree.

---

[1] "For convenience of discussion, we have taken the enumerated errors out of the order in which [Ary] has listed them. . . ." *Pugh v. State*, 347 Ga. App. 710, 711 (1), n. 5 (820 SE2d 766) (2018) (citation omitted).

Child molestation is committed when a person "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1). Here, Ary was charged with child molestation for "plac[ing] his hand upon the clothed vaginal area of [J. H.] while she was sitting in his lap" on two separate occasions and "rub[bing] his clothed penis area against the clothed vaginal area of [J. H.] in a bathroom" all "with the intent to arouse and satisfy the sexual desires of the accused[.]"

Other than the general standard applicable to a review of the sufficiency of the evidence, Ary cites no legal authority and nothing in the record in support of his contention that the evidence was insufficient to support his convictions. It is well settled that "[t]he testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-14-8. Here, the victim, J. H., testified in detail about all of the occurrences alleged in the indictment. Her testimony, alone, was sufficient to support Ary's convictions. See *Hogg v. State*, 356 Ga. App. 11, 13 (1) (846 SE2d 183) (2020) (victim's testimony alone was legally sufficient to support convictions for child molestation). Moreover, although not required, the victim's testimony was corroborated in this case. J. H.'s mother testified regarding J. H.'s outcry to her. See

*Reinhard v. State*, 331 Ga. App. 235, 238 (1) (c) (770 SE2d 314) (2015) (victims'

testimony corroborated by testimony of witnesses to the victims' outcries). The jury

also viewed a videotaped forensic interview of J. H., in which she reiterated her

allegations regarding Ary. See *Bufford v. State*, 320 Ga. App. 123, 123 (1) (739 SE2d

421) (2013) (forensic interviews corroborated the children's trial testimony).

Furthermore,

[i]t is well settled that it is the function of the jury, not this Court, to judge the credibility of witnesses, resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. In so doing, a jury is authorized to believe or disbelieve all or any part of the testimony of the witnesses. Ultimately, as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

*Whorton*, 318 Ga. App. at 888 (1) (b) (citation omitted); see also *Clark*, 282 Ga. App.

at 250 (1) (b) ("We defer to the jury's decision on the proper weight and credibility

to be given the evidence, because it is the jury's role to choose what evidence to

believe and what to reject.") (citation omitted). In this case, the jury obviously

resolved any credibility or inconsistency issues against Ary and chose to believe, as

they were authorized to do, the victim's testimony. Accordingly, Ary's challenge to

the sufficiency of the evidence supporting his convictions for child molestation lacks

merit.

7

2. Ary contends that the trial court erred in admitting other acts evidence. We disagree.

Prior to trial, the State filed a notice of intent to present evidence that Ary had molested M. K. At a motions hearing prior to trial, Ary's trial counsel objected to the admission of the other acts evidence on the ground that the evidentiary value was substantially outweighed by the prejudicial effect. At trial, trial counsel renewed his objection to the admission of the other acts evidence. Over trial counsel's objection, the trial court gave the jury a limiting instruction and allowed the State to present evidence that Ary had molested M. K.

OCGA § 24-4-414 (a) ("Rule 414") provides: "In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." We have recognized that Rule 414 creates "a rule of inclusion, with a strong presumption in favor of admissibility." *State v. McPherson*, 341 Ga. App. 871, 873 (800 SE2d 389) (2017) (citations and punctuation omitted). Evidence admitted under Rule 414 "may be considered for its bearing on any matter to which it is relevant," including propensity. Id. (citation omitted). And, as we have explained, under Rule 414 (a),

8

showing a disposition toward molestation is a relevant purpose and not unfairly prejudicial in light of the nature of that conduct. Thus, evidence that a defendant engaged in child molestation in the past is admissible to prove that the defendant has a disposition of character that makes it more likely that he did commit the act of child molestation charged in the instant case.

Id. at 873-874 (citation and punctuation omitted).

Nevertheless, evidence that is admissible under [Rule 414] may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. OCGA § 24-4-403 [("Rule 403")].

*Dixon v. State*, 350 Ga. App. 211, 213 (1) (828 SE2d 427) (2019) (citations and punctuation omitted). "This determination lies within the discretion of the trial court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." Id. at 214 (1) (citations omitted). "We review the trial court's decision on whether to admit evidence under Rule 414 for a clear abuse of discretion." *Jackson v. State*, 342 Ga. App. 689, 691 (805 SE2d 457) (2017).

9

Ary contends that the trial court should have excluded the evidence under Rule 403 because of the danger of unfair prejudice, confusion of the issues, and misleading the jury. According to Ary, the only reason to admit the other acts evidence was to show propensity for child molestation, and propensity for child molestation was only "marginally relevant" under the facts of this case. Ary argues that the other acts evidence was highly prejudicial and that a properly conducted Rule 403 balancing would have prohibited the introduction of the other acts evidence.

Upon review, we conclude that the trial court did not abuse its discretion in admitting the other acts evidence. The evidence was clearly relevant to Ary's intent and propensity for child molestation. As the trial court found,

> the State had a compelling need for the evidence to show intent because Ary admitted he was close with the victim, she sat on his lap and hugged him often, and Ary's defense was that the victim was lying. Moreover, the other acts occurred close in time to the underlying offenses and, like the underlying offenses, occurred while the other acts victim was sitting on Ary's lap.

As noted above, the prejudicial impact of evidence of similar transactions in child molestation cases is generally considered to be outweighed by its probative value in demonstrating an accused's disposition toward committing a molestation. There has

been no showing that the evidence would confuse the issues, mislead the jury, or that the probative value of the evidence would otherwise be substantially outweighed by the danger of unfair prejudice. In light of the "strong presumption in favor of admissibility," we cannot say that the trial court abused its discretion in allowing the other acts evidence to be admitted. *Wilkerson v. State*, 356 Ga. App. 831, 834 (1) (849 SE2d 677) (2020).

3. Ary contends that the trial court erred in its charge to the jury on other acts evidence. We find no reversible error.

Ary's trial counsel did not object to the jury instruction at issue. This failure to object precludes "appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties." OCGA § 17-8-58 (b). See also *Alvelo v. State*, 290 Ga. 609, 614 (5) (724 SE2d 377) (2012). Ary contends that the trial court's instruction is confusing, misleading, and constitutes plain error.

Plain error review includes a four-part analysis:

First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the

11

error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

*Scott v. State*, 306 Ga. 417, 421 (3) (831 SE2d 813) (2019) (citation omitted).

The trial court charged the jury as follows:

Sometimes evidence is admitted for a limited purpose. Such evidence may be considered by you for the sole issue or purpose for which the evidence is limited and not for any other purpose.

In order to prove its case, the State must show intent and must negate or disprove mistake or accident.

To do so, the State has offered other acts allegedly committed by the accused. You are permitted to consider that evidence only insofar as it may relate to those issues and not for any other purpose.

You may not infer from such evidence that the Defendant is of a character that would commit such crimes.

The evidence may be considered only to the extent that it may show the elements that the State is required to prove in the crimes charged in the case now on trial. Such evidence, if any, may not be considered . . . by you for any other purpose.

The Defendant is on trial for the offenses charged in the bill of indictment only and not for any other acts.

Before you may consider any other alleged acts for the limited purposes stated, you must first determine whether the accused committed the other alleged acts.

If so, then you must determine whether the acts shed any light on the elements of the offense for which it was admitted in the crimes charged in the indictment in this trial. Remember to keep in mind the limited use and the prohibited use of this evidence about other acts of the Defendant.

By giving you this instruction, the Court in no way suggests to you that Defendant has or has not committed any other acts, nor whether such acts, if committed, prove anything; this is solely a matter for your determination.

The jury charge was erroneous because other acts evidence admitted under Rule 414 "may be considered for its bearing on any matter to which it is relevant." OCGA § 24-4-414 (a). Ary did not affirmatively waive this error. However, Ary has failed to show that the erroneous jury charge affected his substantial rights, because he has not

shown that the error probably affected the outcome of his trial. See *Scott*, 306 Ga. at 421 (3).

Ary argues that the jury charge impacted his substantial rights "because the jury may have thought the evidence showed inconsistencies in the alleged victim's testimony, constituted impeachment evidence, or otherwise provided some reasonable doubt[,]" and that the "trial court's misleading charge informed the jury it could only consider the other acts evidence if they found the evidence assisted the State in making its case" against him. Ary asserts that "the erroneous charge deprived the jury from considering impeachment evidence." Specifically, Ary argues that M. K. initially said during cross-examination that she told only her mother, the school counselor, and the prosecutor about Ary touching her. Ary contends "[s]ubsequently, she changed her story and said she told J. H." Ary further argues that there was "some uncertain and arguable inconsistency about when the exchange" between J. H. and M. K. took place.

However, nothing in the erroneous jury charge excluded or limited the impeachment evidence introduced by Ary because the jury charge only limited consideration of other acts evidence offered by the State. Furthermore, the trial court properly instructed the jury on witness credibility and impeachment:

14

The jury must determine credibility of the witnesses. In deciding this, you may consider all the facts and circumstances of this case, including the . . . witnesses' manner of testifying, their means and opportunity of knowing the facts about which they testify, the nature of the facts about which they testify, the probability or improbability of their testimony, their interest or lack of interest in the outcome of this case, and their personal credibility as you may observe it. . . . To impeach a witness is to prove that the witness is unworthy of belief. A witness may be impeached by disproving the facts to which the witness testified.

"[J]ury charges are not to be evaluated in isolation, but rather must be considered as a whole." *Hilton v. State*, 288 Ga. 201, 206 (4) (b) (702 SE2d 188) (2010). Considering the charge as a whole, the trial court's instructions allowed the jury to consider any discrepancies in the conversation between J. H. and M. K. as impeachment evidence.

Furthermore, Ary cannot demonstrate that the jury charge on other acts evidence affected his substantial rights because the charge given by the trial court potentially benefited Ary by preventing the jury from considering the other acts evidence to show that Ary had a propensity to commit child molestation. A correct charge on Rule 414 would have allowed the jury to consider propensity, as well as any other matter that the jury considered relevant. See *McPherson*, 341 Ga. App. at

873. Instead, the jury charge instructed the jury: "You may not infer from such evidence that the Defendant is of a character that would commit such crimes."

Finally, Ary points to no evidence to show that the jury was confused by the charge. Compare *Potts v. State*, 331 Ga. App. 857, 865 (1) (771 SE2d 510) (2015) (defendant pointed to jurors' request to be recharged as evidence of their confusion). Nor do we find any indication of jury confusion in the transcript. "[T]o determine whether a jury charge is likely to have misled or confused the jury about the elements of a particular crime, we must consider the charge as a whole, reading all of its parts in conjunction with each other." Id. Consequently, Ary has not shown that the erroneous jury charge affected the outcome of his trial, and therefore Ary has not established that the erroneous jury charge constitutes plain error.

4. Ary asserts that his trial counsel was ineffective for failing to adequately investigate the case, failing to call witnesses favorable to the defense, failing to object to the jury charge on other acts evidence, and failing to timely ask for a limiting instruction on the other acts evidence.

> To establish that his trial counsel was constitutionally ineffective, Appellant must prove both deficient performance by counsel and resulting prejudice. To show that his lawyer's performance was deficient, Appellant must demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the

16

circumstances and in the light of prevailing professional norms. This is no easy showing, as the law recognizes a "strong presumption" that counsel performed reasonably, and Appellant bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

Even when a defendant has proved that his counsel's performance was deficient in this constitutional sense, he also must prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, Appellant must demonstrate a "reasonable probability" of a different result, which, the United States Supreme Court has explained, is a probability sufficient to undermine confidence in the outcome.

The reviewing court need not address both components of the inquiry if the defendant makes an insufficient showing on one. In all, the burden of proving a denial of effective assistance of counsel is a heavy one, and Appellant has failed to carry that burden.

*Brown v. State*, 302 Ga. 454, 457-458 (2) (807 SE2d 369) (2017) (citations and punctuation omitted). See also *Jones v. State*, 318 Ga. App. 342, 346 (3) (733 SE2d 400) (2012) (defendant must show by clear and convincing evidence that the performance of his lawyer was not within the range of reasonable professional lawyering).

17

Whether a trial attorney renders constitutionally ineffective assistance is a mixed question of law and fact. "The proper standard of review requires that we accept the [trial] court's factual findings unless clearly erroneous, but we independently apply the legal principles to the facts." *Head v. Carr*, 273 Ga. 613, 616 (4) (544 SE2d 409) (2001). After reviewing Ary's claims in accordance with these standards, we conclude that Ary has not met his burden of demonstrating that his trial counsel was ineffective.

We first note that the attorney who represented Ary during his first trial died before the second trial. Ary's trial counsel for his second trial was a criminal defense lawyer with over thirty years of experience.

(a) We begin with Ary's argument that his trial counsel performed deficiently by failing to adequately investigate the case, "in part due to a complete lack of trial strategy." Ary contends that trial counsel's failure to adequately investigate the case resulted in the failure to call witnesses favorable to the defense. While we generally presume that trial counsel's decisions were "made in the exercise of reasonable professional judgment," *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), we are mindful that "reasonable professional judgment requires proper investigation." *Turpin v. Helmeci*, 271 Ga. 224, 226 (518 SE2d 887) (1999). Thus,

18

"[t]he right to reasonably effective counsel is violated when the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choices of trial tactics and strategy." Id. (citation and punctuation omitted). Trial counsel has the obligation to make reasonable investigations or to make a reasonable decision that makes a particular investigation unnecessary. *Terry v. Jenkins*, 280 Ga. 341, 346 (2) (c) (627 SE2d 7) (2006).

> But, in any case in which the ineffectiveness of counsel for inadequate investigation is claimed, the reasonableness of a particular decision not to investigate in the manner urged must be assessed in light of all the circumstances at that time, and such assessment must include a heavy measure of deference to counsel's judgments.

*Barker v. Barrow*, 290 Ga. 711, 713 (1) (723 SE2d 905) (2012).

At Ary's motion for new trial hearing, his trial counsel testified that his primary trial strategy was to impeach J. H. According to trial counsel, his strategy was to "narrow [his] focus on impeaching [J. H.] and show[] that she was not credible." Ary contends that his trial counsel had no specific theory, plan, or professional method designed to implement his trial strategy of impeaching J. H., never obtained a full trial transcript of the first trial, refused to interview witnesses friendly to the defense,

19

apparently did not hire an investigator, did not speak to any experts about the forensic interview, and could not remember if he obtained any school records.

At the motion for new trial hearing, which was more than three years after trial, trial counsel could not remember precisely how he had been planning to impeach J. H. with prior inconsistent statements and testimony of other witnesses, but he testified that he knew what he wanted to ask and what he needed to ask. Trial counsel could not remember whether he had the entire trial transcript or just portions, but he testified that he had "a big box of witness statements, transcripts, motions, all kinds of stuff." According to trial counsel, "I read everything that was provided to me by Mr. Ary in the first trial. He had detailed notes and records. I didn't see anything that could have helped. Again, my focus was on impeachment. Nothing that was tried before was going to help this time. Nothing." Trial counsel noted that because M. K. testified in the second trial but not in the first trial, the case was much more difficult. He testified, "I didn't want to muddy the waters with things that had been done before. I wanted to focus on the inconsistency of the statements and the credibility. I just tried to have a laser focus on that." Trial counsel testified that he sought the victim's school records, although he could not remember what he got.

Although trial counsel did not interview character witnesses who testified on Ary's behalf at the first trial, he testified that he had read transcripts from the first trial, was aware of what those witnesses would testify to, and made a trial strategy decision not to call those witnesses. Moreover, trial counsel was present in the courtroom during the motion for new trial hearing, heard all the proposed character witnesses, and later testified that what the witnesses said is what he had expected the witnesses would have testified to. None of it surprised him, and their testimony at the motion for new trial hearing did not change his decision not to call those witnesses at trial.

Trial counsel made a similar decision not to call an expert witness. At the motion for new trial hearing, Tod Lynch Stanley was admitted as an expert in performing ABEL screening, which he testified is a test for sexual interests. Stanley testified that he had performed ABEL testing on Ary, and "there was no significant measure of deviant sexual interest. So, at this point he would have passed an initial screening for not having pedophilic interests." However, Stanley testified that Ary probably was not completely honest on certain parts of the test. At trial, trial counsel initally stated that he intended to call Stanley to testify and referred to Stanley's testing of Ary as the subject of his testimony. However, trial counsel ultimately

21

decided not to call Stanley as a witness because Ary's results on the testing were marginal. According to trial counsel, he "didn't want to open the door with . . . Stanley with marginal results on something that could have had really bad results[.]" Trial counsel testified, "I have all the respect for [Stanley]. . . . [H]e's done very good work for me. He has all the credibility in the world with me but it would not have helped. Again, if [Ary] would have hit the ball out of the park I would have maybe [thought] differently, but these were marginal results. [The prosecutor] would have had a field day."

In its order denying Ary's motion for new trial, the trial court found that "[t]rial counsel clearly knew and understood what [the proposed character] witnesses would say, and strategically chose not to present them. He made a trial strategy decision not to call them, but rather focused Ary's defense on his claim the victim was lying instead." The trial court also found that "[c]ounsel was aware of Stanley's evaluation and conclusions on Ary, and was present when Stanley testified that Ary probably was not honest on certain parts of the testing administered to him. Counsel was clear that he did not want to open the door on that issue and risk Ary's credibility, who testified on his own behalf." Because these findings are supported by the record, they are not clearly erroneous. See *Sullivan v. State*, 308 Ga. 508, 512 (2) (a) (842 SE2d

22

5) (2020) (trial court's finding that "trial counsel 'spoke to multiple possible witnesses, whom he ultimately declined to call at trial'" was supported by the record and thus not clearly erroneous) (punctuation omitted).

It is well-settled that "a decision as to which defense witnesses to call is a matter of counsel's trial strategy and tactics and will not support a claim of ineffective assistance of counsel unless it is so unreasonable that no competent attorney would have made the decision under the circumstances." *Sullivan*, 308 Ga. at 511 (2) (a) (citation and punctuation omitted). Furthermore, "the decision whether to present an expert witness, like other decisions about which defense witnesses to call, is a matter of trial strategy that, if reasonable, will not sustain a claim of ineffective assistance." Id. at 512 (2) (b) (citation and punctuation omitted). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." *Billington v. State*, 313 Ga. App. 674, 676 (1) (722 SE2d 395) (2012) (citation and punctuation omitted). In other words, "[t]rial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." *Gregoire v. State*, 309 Ga. App. 309, 311 (2) (711 SE2d 306) (2011) (citation and punctuation omitted).

Here, as noted previously, the trial court found that trial counsel made a trial strategy decision not to call the witnesses that Ary contends he should have called, and the record supports that finding. "Although trial counsel could have chosen to call additional witnesses, we cannot conclude on this record that his tactical judgment here was outside the wide range of reasonably effective assistance." *Sullivan*, 308 Ga. at 511 (2) (a) (citations and punctuation omitted). Ary "has made no showing that the decision not to call the [proposed witnesses] was so unreasonable that it amounted to deficient performance." *St. Germain v. State*, 358 Ga. App. 163, 164 (1) (a) (853 SE2d 394) (2021). Furthermore, given counsel's reasonable explanation that he did not want to risk the possibility of harmful testimony from Stanley, Ary "has failed to demonstrate that counsel's decision not to [call Stanley as] an expert was constitutionally deficient." *Horton v. State*, 310 Ga. 310, 330 (5) (b) (849 SE2d 382) (2020). As a result, Ary has failed to meet his burden of proving ineffective assistance of counsel on this ground.

(b) Ary also argues that his trial counsel was ineffective for failing to object to the jury charge on other acts evidence and failing to timely ask for a limiting instruction regarding the other acts evidence.

24

As we discussed in Division 3, we agree that the jury charge regarding the admission of evidence under Rule 414 was improper. However, even if we assume that trial counsel was deficient in failing to object to the jury instruction, Ary has not shown that the improper jury charge prejudiced him. To establish prejudice for purposes of an ineffective assistance of counsel claim, Ary must show "a reasonable probability" that the jury would have reached a different result if his trial counsel had objected to the jury charge, and he has not met this burden. See *Brown*, 302 Ga. at 457 (2). In fact, as noted in Division 3, by limiting the reasons for which the jury could consider the other acts evidence, the jury charge actually benefitted Ary; the charge prevented the jury from considering the evidence to show Ary's propensity to commit child molestation. A proper instruction on Rule 414 evidence would have allowed for such consideration. Furthermore, the trial court instructed the jury on witness credibility and the permissible method of impeachment. When read in context, the jury instruction did not prevent the jury from considering J. H.'s conversation with M. K. as impeachment. Trial counsel was therefore not ineffective for failing to object to the jury charge.

In addition, although Ary contends that his trial counsel was ineffective for failing to request a timely limiting instruction, the trial court gave a limiting

25

instruction before the school counselor testified regarding M. K.'s outcry. Ary argues that his trial counsel was ineffective for failing to object and request a limiting instruction earlier, when, in response to the question, "What did you tell [M. K.], J. H. testified, "First [M. K.] said that he touched her, and then I said that he touched me, too." However, evidence admitted under Rule 414 is admissible "for its bearing on any matter to which it is relevant." OCGA § 24-4-414 (a). Consequently, no limiting instruction is necessary for Rule 414 evidence, and trial counsel's failure to request a limiting instruction was not deficient. See *Hurston v. State*, 318 Ga. 818, 832 (3) (d) (854 SE2d 745) (2021) (trial counsel not deficient for failing to request limiting instruction that the trial court was not required to give). This claim of ineffective assistance, like the others, fails.

5. Ary contends that cumulative error prevented him from receiving a fair trial. We disagree.

"Although we may now consider whether the cumulative effect of errors requires a new trial, where, as here[,] there are not multiple errors, there can be no

26

cumulative error." *Williams v. State*, 358 Ga. App. 152, 157 (c) (853 SE2d 383) (2021).

*Judgment affirmed. McFadden, C. J., and Rickman, P. J., concur.*